**UNITED STATES of America,
Appellee,**

v.

**Robinson JOYCE, Jr., Appellant.**

**No. 18335.**

United States Court of Appeals,
Seventh Circuit.

Jan. 26, 1971.

Richard Fain, Chicago, Ill., for appellant.

Richard L. Rosenfield, Dept. of Justice, Washington, D. C., William J. Bauer, U. S. Atty., Chicago, Ill., for appellee.

Before CASTLE, Senior Circuit Judge, and CUMMINGS and STEVENS, Circuit Judges.

CUMMINGS, Circuit Judge.

This is an appeal from a conviction for refusal to submit to induction into the Armed Forces in violation of 50 U.S.C. App. § 462. After a bench trial, the court held that the defendant did not qualify for classification as a conscientious objector, and therefore found him guilty and imposed a three-year sentence. We reverse.

Defendant is a 24-year-old Negro who was classified I–A on November 17, 1965, after terminating his schooling. A month thereafter, he was ordered to report for a physical examination on January 4, 1966. A week beforehand, he requested conscientious objector Form 150, and his Local Board sent it to him on January 3, 1966. Nine days later, the Local Board mailed him a statement of physical acceptability, and on the following day defendant executed the conscientious objector form, which was received by the Local Board on January 14, 1966.

In the Form 150, defendant reported that he was working for the United States Steel Corporation in Gary, Indiana, and that he was a member of the A–Beta Israel Hebrew sect located at 4654 Cottage Grove Avenue in Chicago. He stated that he believed in "the God of Abraham, the God of Isaac, the God of Jacob," and that his duty was "to live by the commandments of Elohim (God)." He reported that he "believed in the teachings of the Torah (Bible) and this is the source of my information and knowledge." He said that he did not believe in the use of force under any circumstances. He described his religious sect or organization as a "way of life," reporting that he did not remember when he became a member of this sect, but was inspired to do so by the Bible. He referred to two excerpts from the Bible as supporting his opposition to war. He appended five scriptural quotations to explain his beliefs.

On January 20, 1966, the Local Board rejected defendant's conscientious objector classification and classified him I–A. Indiana state headquarters of the Selective Service System advised the Local Board "there must be some information in the file to show why the Local Board

did not feel that the registrant is conscientious in his claim." The Local Board was directed to cancel the order to report for induction, to reopen and consider anew the classification, and to request additional information from the registrant, or to request him to appear before it.

On May 19, 1966, defendant reported for a personal appearance before the Local Board. The minutes of the Local Board reveal the following:

" * * * Board asked him how he could justify working in the Steel Mills where materials for the Armed Forces are being made.

"Registrant answered, 'I have nothing to do with making the materials, I just work there, the job does the making of the materials'.

"He said he has had this 'Faith' about a year. His folks are Hebrews too, only they don't know it yet. When asked if he would fight to protect his family, if they were in the process of being attacked, and he answered, 'I would not do a thing to help them', 'any kind of fighting is against "my way of life" '.

"The Board asked him 'What about the Jewish people in Israel, and the Jewish people down through History that have always fought for their way of life?' Joyce answered, 'They aren't really true Jews. The only true Jew is black, as was our father Abraham'. Then he said, 'If the Jewish people did fight a long time ago, then they were ordered to fight by 'someone'. He couldn't explain the 'Someone'.

"The Board asked him if he would go into Non-combatant training, or in work in a hospital taking care of the wounded and sick. Joyce answered, 'No, that would still be entering into the Armed Forces of the United States. If I took care of the sick or wounded, that means I would be helping those who had fought in the war'. The Board then asked him if he would rather go to prison than into the Army, and Joyce answered, 'Yes, he would rather go to prison for two years'.

"The Board feels that this Registrant is highly confused. He said he reads the Old Testament, but so far has never read anything about the Hebrews fighting. The Board recommended he read the Testament a little more, as the Hebrew people have always fought in wars. Joyce said again, 'then they aren't true Jews, or someone told them to fight'. He still couldn't explain who he meant by 'someone'. But according to Joyce, 'Fighting was alright for the Old Testament Jews, because someone told them to fight.'

"Board asked him if his religion taught him to obey the Laws of the Land where he lives. He said 'I don't have a religion, it is a way of life. I don't go to church, I go to the A–Beta Temple. Yes, we are taught to obey the Laws of the Land.' The Board then said, 'Well, the Selective Service System is of this country, and their laws state you must go into service or into Non-combatant service, or serve in a hospital. Will you go into Non-combatant or Hospital Service?' Joyce answered, 'No.' The Board asked him if he would fight for his country if it were ever envaded (sic). Joyce answered he would not fight for any reason. The Board said, 'If this Country were Communist, then you couldn't practice "your way of life".' Joyce answered 'He didn't know about that, but he still wouldn't fight for his country'.

"The Board feels strongly that this Registrant is not consistent in his statements. He states he couldn't take a Hospital job because he would be taking care of men that had fought in the wars, yet he works in the Mills that makes materials for the war effort.

"They said to retain him in a I–A Classification, and strongly recommend that he be drafted into the Service."

In appealing his ensuing I–A classification, defendant advised that he "could not follow and obey the laws, statutes and commandments of the Holy One

of Israel if I were to join the Army. Scripture tells me directly not to join in the armies of (Babylon) America," citing various Biblical verses.

The Appeal Board thereafter forwarded defendant's file to the Department of Justice for an advisory recommendation, and on March 24, 1967, the Department sent defendant a notice of a hearing scheduled before a hearing officer in South Bend, Indiana, on April 11, 1967. Defendant did not appear at the hearing, subsequently explaining to the Appeal Board that his absence was "because I didn't have sufficient funds for the trip."

On November 3, 1967, the Department of Justice recommended to the Appeal Board that defendant's conscientious objector claim should not be sustained. The Department relied in part on defendant's failure to file his claim of conscientious objection until he was notified of his physical acceptability for service. The Department also expressed reliance on the statement of a leader of a rival religious organization, formerly attended by defendant, that defendant had not been "sincere in his pursuit of religious studies" with the Israelite Bible Class. This rabbi attacked the A-Beta Israel Hebrew group, which defendant subsequently joined, as "not orthodox Jewish * * * not the true religion and the entire group is nothing but a fraud."

According to the Department's résumé, defendant's own rabbi advised the Department that "the belief that one should object to military service stems from the Scriptures, but that no brother in this way of life [A–Beta sect] is told directly to object to military service." He said that failure to object to military service would not cause expulsion from his sect and that such objection "must come from the true belief in the writings of the Bible." The rabbi declined to comment on the sincerity of defendant's request for a conscientious objector status "since he has had no occasion to discuss this matter with him, and as he was not sufficiently aware of his personal conduct."

The résumé also shows that defendant requested not to be assigned Saturday work at the United States Steel Corporation. One of his co-workers said that the registrant described himself as a member of a Hebrew Church of Chicago and "often talked about his religion." He reported that the registrant did not eat pork and abstained from eating meat on Fridays. A neighbor reported that registrant's mother told her that he attends a Hebrew Center in Chicago and does not eat pork, and that his sister influenced the registrant to attend that church. Another member of the A–Beta Israel Hebrew Center advised the Department of Justice that the registrant attends Saturday Bible classes two or three times a month, "that all brothers in this way of life feel the same attitude toward military service, and that they believe that it is not their right to go against God to fight in the military service or to kill." He said that he and his brothers object to noncombatant service because even mopping floors contributes to the operation of the military machine. He had no reason to doubt that registrant was not sincere in such beliefs. Another member of the Center advised that the sect believes that you cannot participate in military service since it is against the laws of God, and that registrant was sincere in his conscientious objector stand.

In recommending against a conscientious objector classification for defendant, the Department relied on the Local Board's minutes of May 19, 1966, particularly with reference to its statement that defendant was inconsistent in his statements about his religion, his statement that he does not have a religion but "a way of life," and his position at the United States Steel Corporation, which supplies materials for use in the Armed Forces.

On November 14, 1967, the Appeal Board sent defendant a copy of the Department's recommendation and solicited a written reply. In his reply, defendant explained that he had not appeared before the Department's hearing officer in South Bend, Indiana, because he did not have sufficient funds for the trip. In

this letter, defendant said that the leader of the rival Israelite Bible Class couldn't truthfully make a statement about defendant's sincerity because that leader had no knowledge thereof. He asserted that Negroes are the true Hebrews or chosen people of God.

The appeal was denied on January 30, 1968. On April 12, 1968, defendant refused to be inducted, and the indictment was returned on July 1, 1969.

Petitioner's file, including his Form 150 statements, correspondence, and the minutes of his personal appearance before the Local Board, established a prima facie case for his deferment as a conscientious objector to service in the Armed Forces. The Appeal Board, considering defendant's claim *de novo* (United States v. Chodorski, 240 F.2d 590 (7th Cir. 1956)), offered no explanation of the basis for affirming Joyce's I–A classification. It is clear, however, from defendant's file and the classification ultimately given him, that both Boards concluded that the registrant was not sincere in his beliefs.

■ Our duty on review is limited to scrutiny of the Selective Service System's records to ascertain whether a lawfully cognizable basis in fact supports the Local Board's classification. Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567; Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132; United States v. Lemmens, 430 F.2d 619, 624 (7th Cir. 1970). After careful scrutiny of the material contained in defendant's file, we conclude that none of the factors apparently relied upon by either the Local or Appeal Board offers the minimal probative weight to establish the necessary basis in fact for Joyce's classification.

The Local Board discounted Joyce's sincerity because of its perception of "inconsistencies" in his statements regarding his beliefs, and its belief that his occupation was incompatible with a conscientious objection to any participation in war-related service. Neither proposition is valid.

■■ The function of the Selective Service Board in conscientious objector cases is not to assess the theological or scriptural sophistication of the registrant. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, makes it abundantly clear that the Board must focus on the nature and depth of the registrant's individual beliefs, however derived or inspired, whether orthodox or unorthodox:

> "Local boards and courts in this sense are not free to reject beliefs because they consider them 'incomprehensible.' Their task is to decide whether the beliefs professed by a registrant are sincerely held and whether they are, in his own scheme of things, religious." 380 U.S. at p. 185, 85 S.Ct. at p. 863; see also Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308.

This principle is critically important in the case of an inarticulate registrant who lacks sophistication or a cultivated intellect, or whose beliefs derive from profound personal insights or are inspired by the teachings of an unstructured or unorthodox sect. Cf. Caverly v. United States, 429 F.2d 92, 94 (8th Cir. 1970). In this case, however, it is manifest that the "inconsistencies" in Joyce's beliefs were judged in the perspective of the Board's own scriptural and historical perceptions of Judaism. Reliance upon such matters was improper.

■ Likewise, nothing in the registrant's occupation even remotely belies the sincerity of his convictions. Defendant's job with the steel mill entailed cleaning open hearth furnaces. The Government has conceded, and we fully agree, that no reasonable inference could be drawn from such employment as a general laborer which would negate the sincerity of the registrant's convictions. Cf. Caverly v. United States, 429 F.2d 92, 94 (8th Cir. 1970).

■■ The additional factors cited by the Justice Department's recommendations add nothing of substance to support the I–A classification given Joyce. Under certain circumstances, the unexplained tardiness of a claim may, when

coupled with other indicia of insincerity, undermine the credibility of the registrant. Cf. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428; Bishop v. United States, 412 F.2d 1064 (9th Cir. 1969). Tardiness standing alone, however, carries slight weight in light of the subjectivity of the beliefs involved and the fact that aging, as well as external circumstances, may serve to crystallize sincere beliefs in a young man's mind long after his initial registration. See generally, United States v. Nordlof (7th Cir. 1971); cf. United States v. Abbott, 425 F.2d 910 (8th Cir. 1970). Joyce's Selective Service file discloses that his religious beliefs and conscientious objection to war matured approximately a year before he presented them to the Local Board in his request for a deferment. At that time he already held a student deferment. Cf. United States v. Lemmens, 430 F.2d 619 (7th Cir. 1970). At approximately the same time, he joined the A–Beta Hebrew sect which separated from the Israelite Bible Class to which he had belonged. The Résumé of Inquiry submitted to the Appeal Board along with the Justice Department's recommendations overwhelmingly supports Joyce's assertion that, ever since his membership in that sect, he has rigorously observed his religious convictions. We can see no basis in fact in this case for any reliance upon the timing or circumstances of his claim for deferment as a conscientious objector. Cf. United States v. Abbott, 425 F.2d 910 (8th Cir. 1970); United States v. Lemmens, 430 F.2d 619 (7th Cir. 1970).

■ We also reject the adverse comments of the leader of the Israelite Bible Class as providing any proof of insincerity. The Résumé of Inquiry discloses that any knowledge that rabbi might have had regarding the character or sincerity of defendant's beliefs arose from contacts prior to Joyce's departure from that group to join the A–Beta Israel Hebrew Center. In addition, as previously noted, the Résumé states that the rabbi "indicated that he knows nothing of the A–Beta Israel Hebrew Group of which the registrant is now a member but that in his own opinion, they are not orthodox Jewish, they are not the true religion and the entire group is nothing but a fraud." These uninformed criticisms of the religious philosophies held by defendant's sect hardly illuminate the question of the registrant's sincerity.

■ Finally, we find meritless the contention that defendant's failure to appear before the Justice Department's hearing officer in South Bend, Indiana, implies that his religious beliefs are insincere. Such hearings may assist the registrant in clarifying legitimate questions concerning the nature of his belief or the depth and sincerity with which it is held, but failure to appear at such a proceeding is not a substitute for a factual basis for disbelief of his claim. Moreover, in his correspondence with the Appeal Board, Joyce subsequently explained that he lacked the funds for the trip and had not understood its importance. At the same time, he responded in writing to the matters raised by the investigator.

In Dickinson v. United States, 346 U.S. 389, 397, 74 S.Ct. 152, 158, 98 L.Ed. 132, the Court stated that

"when the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice."

Our review of this registrant's file has uncovered no fact or combination of facts which provides any justification for questioning his sincerity. Not one iota of evidence casting doubt on his claim was uncovered by the Justice Department's investigation. On the contrary, the Résumé of Inquiry is replete with evidence confirming that his objection to war derived from sincerely held religious convictions. The conclusion that a board's classification is supported by "basis in fact" is not automatic. Those "facts" must contain a minimal proba-

tive value, either in themselves or on the particular facts of a given case. We have found no such evidence in this file.

At the conclusion of the trial in the district court the prosecutor acknowledged defendant's sincerity. Our appraisal of the entire record is the same as his. We are satisfied that defendant's claim of conscientious objector status was rejected on an impermissible basis.

The Court expresses its appreciation to Richard Fain of the Chicago Bar who served diligently and effectively as defendant's appointed counsel on appeal.

Reversed.