UNITED STATES of America

v.

Allen Dinardo STEPHENS, Appellant.

No. 71–1058.

United States Court of Appeals,
Third Circuit.

Argued April 23, 1971.

Decided July 2, 1971.

Aldisert, Circuit Judge, concurred and filed opinion.

Edward H. Weis, Defender Assoc. of Philadelphia, Philadelphia, Pa., for appellant.

Henry J. Horstmann, Asst. U. S. Atty., Philadelphia, Pa. (Louis C. Bechtle, U.

S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before SEITZ, ALDISERT and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Appellant was convicted, after a bench trial in the district court, on January 19, 1971, of failing to comply with an order to report for induction on January 13, 1969, in violation of 50 U.S.C. App. § 462. This appeal followed.

Appellant completed the Classification Questionnaire (Form 100) required of all new draft registrants on February 6, 1968. On that questionnaire he signed "Series VIII" which stated:

> I claim to be a conscientious objector by reason of my religious training and belief and therefore request the board to furnish me a Special Form for Conscientious Objector (SSS Form 150).

Thereupon, his local board mailed him a Form 150, which he filled out. In answering Series II, "Religious Training and Belief," he provided the following answer, pertinent here:

> 1. Do you believe in a Supreme Being?
>
> [Answer] Yes.
>
> 2. Describe the nature of your belief which is the basis of your claim made in Series I above,[1] and state whether or not your belief in a Supreme Being involves duties which to you are superior to those arising from any human relation.
>
> [Answer] In answering question two in Series II I am using this scripture from Cor. 10:3.
>
>> Though we walk in in [sic] flesh we do not wage warfare according to what we are in flesh. For the weapons of our warfare are not fleshly, but powerful by God for overturning stongly [sic] entrenched things.
>
> 3. Explain how, when, and from whom or from what source you received the training and acquired the belief which is the basis of your claim made in Series I above.
>
> [Answer] I have attended meetings with with [sic] my mother her being a Jehova's [sic] Witness and also congregational meetings.
>
> \* \* \* \* \* \*
>
> 5. Under what circumstances, if any, do you believe in the use of force?
>
> [Answer] Under no circumstances.
>
> \* \* \* \* \* \*
>
> 7. Have you ever given public expression, written or oral, to the views herein expressed as the basis for your claim made in Series I above?
>
> [Answer] No.

In answer to Series IV, "Participation in organization," appellant answered simply:

> Under this [part?] I have now aswered [sic] several questions I am not claiming to have symbolize [sic] my dedication. But as a conscientious objector, I am protesting because of training and upbringing recieved [sic] as my only religion and believe [sic].

The Form 150 was received by the local board on February 14, 1968. On March 12, 1968, the board classified appellant I–A. In a letter dated April 8, 1968, appellant informed the board that "I do wish to appeal from selective service classification due to my religious training and moral point of view." His file was forwarded to the appeal board on April 15, 1968. The appeal board returned the file on April 23, 1968 without taking any action, requesting instead that the local board grant appellant a personal appearance.

---

1. Appellant signed the following statement in Series I: "I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form and I am further conscientiously opposed to participation in noncombatant training and service in the Armed Forces. I, therefore, claim exemption from both combatant and noncombatant training and service in the Armed Forces."

Appellant appeared before the local board on May 7, 1968. The relevant excerpts of the summary of his appearance are as follows:

> Registrant states that his religious upbringing makes him a conscientious objector. * * * Registrant is not a Jehovah witness [sic]. , * * * Registrant states that mother is Jehovah witness [sic]. Registrant would defend himself or his mother if they were attacked on the street but he would not defend his country however. Registrant would ask for a policeman's help however. Registrant claims military environment would put him in a position where he would have to kill. * * * Registrant is not a member of a religious sect of any kind. * *

Following his appearance the local board reopened his classification and reclassified him I–A without stating any reasons for having rejected his conscientious objector claim.

Appellant underwent a pre-induction physical on June 4, 1968. The results of appellant's pre-induction examination were sent to the local board on July 18, 1968. The local board forwarded appellant's file to the appeal board on July 29, 1968. On November 19, 1968, the appeal board, without stating reasons for rejecting his conscientious objector claim, classified him I–A. On December 17, 1968, appellant was ordered to report for induction on January 13, 1969. He failed to report and this prosecution followed.

■ Before we proceed to the substantive questions presented on this appeal, we must dismiss the government's disingenuous argument that, since appellant failed to report to the induction station on the appointed day (thereby foreclosing the possibility of his being found physically unfit at that time), he has not exhausted his administrative remedies and consequently may not present his defenses to this court. This argument ignores the language of § 10 (b) (3) of the Selective Service Act,[2] which provides that:

> "No judicial review shall be made of the classification of any registrant * * * except as a defense to a criminal prosecution * * * after the registrant has responded *either affirmatively or negatively* to an order to report for induction. * * *"
> (Emphasis supplied.)

In similar circumstances, the Seventh Circuit held in United States v. Lemmens, 430 F.2d 619, 620 (7th Cir. 1970), "[t]hat language does not deny review to a defendant who has wholly failed to report."[3] We therefore find this contention of the Government to be without merit.

The controlling substantive question in this appeal is whether this court's holding in Scott v. Commanding Officer, 431 F.2d 1132 (3d Cir. 1970), compels reversal of appellant's conviction. In *Scott*, we held that, when a local board rejects a registrant's *prima facie* claim for conscientious objector status, it must state reasons for its rejection; and failure to state reasons renders a subsequent induction order invalid. There is no doubt that *Scott* is retroactively applicable to the facts of this case, since neither the local board nor the appeal board stated reasons for the rejection of appellant's claim. United States v. Speicher, 439 F.2d 104 (3d Cir., filed March 11, 1971). We turn, therefore, to the sole question for resolution: whether, as required by *Scott*, appellant presented a *prima facie* case to the local board.

■ The task of communicating one's innermost beliefs is particularly difficult for a registrant such as appellant, to whom an occasion for setting forth those beliefs must appear more an insuperable obstacle than a welcome opportunity.

2. 5 U.S.C. App. § 460(b) (3).

3. Accord, United States v. Powers, 413 F. 2d 834 (1st Cir. 1969). On the exhaustion question generally, see McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

"Few would quarrel, we think, with the proposition that in no field of human endeavor has the tool of language proved so inadequate in the communication of ideas as it has in dealing with the fundamental questions of man's predicament in life, in death or in final judgment and retribution." United States v. Seeger, 380 U.S. 163, 174, 85 S.Ct. 850, 858, 13 L.Ed.2d 733 (1965).

Appellant is obviously an inarticulate young man. As a general rule, registrants with similar limitations are not able to present their claims with the same degree of scholarship and sophistication as are better educated—and better advised—registrants. In his dealings with the local board, appellant was not in the position of a litigant represented by counsel, and should not have been held to the same standard of "pleading" as are adversaries in a court proceeding.[4]

With these thoughts in mind, let us look to the information which appellant presented to the local board. In his Form 150, he indicated his belief in a Supreme Being, stated that he attended Jehovah's Witness meetings with his mother, recited the biblical verse, quoted above, as a description of the nature of his belief, maintained that "[u]nder no circumstances" would he use force, and stated that " * * * as a conscientious objector, I am protesting because of training and upbringing received as my only religious and believe." In his letter of appeal (which antedated his personal appearance and the final reopening and reclassification), he appealed "due to my religious training and moral point of view." At his personal appearance, he stated that " * * *

his religious upbringing makes him a conscientious objector," that although he would defend himself or his mother if attacked,[5] he would not defend his country, and that a "military environment would put him in a position where he would have to kill."

Since, as we have said, the registrant ought not to be held to the same standard as a litigant represented by counsel, the local board, in evaluating these oral and written presentations, should have considered not only the materials themselves, but also the legitimate connective inferences which could fairly and plainly have been drawn therefrom. More particularly, the board should have inquired as to whether the information, viewed as a whole, clearly "presented the *requisite nexus* between religious training and belief and conscientious opposition to war" in any form. (Emphasis supplied.) United States v. Mack, 311 F. Supp. 1230, 1233 (S.D.N.Y.1970). We hold that the information supplied by the appellant did in fact provide such a nexus, and that appellant therefore made out a *prima facie* case.

Obviously appellant's presentation was an unsophisticated and fragmented one. He had neither the knowledge nor the intellectual wherewithal to synthesize his views into a series of appealing and neatly-turned phrases. The essential ingredients of a *prima facie* case were there, however. The information provided suggests that appellant was motivated by a subjectively-held belief,[5a] obviously religiously grounded, which opposed the use of force in any circumstances, save perhaps in defense of himself or his loved ones. The information also suggests that appellant's beliefs prevented both his fighting in defense of

4. See Hunt v. Local Board No. 197, 438 F.2d 1128 (3d Cir., filed February 5, 1971, Freedman, J., concurring); United States v. Turner, 421 F.2d 1251 (3d Cir. 1970); United States ex rel. Berman v. Craig, 207 F.2d 888 (3d Cir. 1953).

5. Note the variance between this and his statement in his Form 150 that he would use force "under no circumstances."

Even if the later statement is the most accurate representation of his belief, however, it does not destroy a *prima facie* case. Sicurella v. United States, 348 U.S. 385, 389, 75 S.Ct. 403, 99 L.Ed. 436 (1955).

5a. Cf. United States v. Brown, 423 F.2d 751 (3d Cir. 1970).

his country and his joining the military, lest he be put in a "position where he would have to kill." While we cannot say on this record whether or not appellant's local board felt he had presented a *prima facie* case,[6] we do think that any local board mindful of its special position of trust with respect to draft registrants would have drawn the few obvious inferences and concluded, as we do now, that appellant had provided information sufficient to make at least a *prima facie* showing that he was one "who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form." [7]

Of the several circuit cases which have found *prima facie* cases in presentations at least as inartful, one stands out for its striking similarity to this case. In United States v. James, 417 F.2d 826 (4th Cir. 1969),[8] the registrant, in his Form 150 had indicated a belief in the Supreme Being, and had said that "I don't believe in killing or aiding anyone else in killing. The Bible says thou shall not kill." He indicated that he relied upon his father, a Jehovah's Witness, for spiritual guidance and that he attended meetings of that sect (though he was not a member). He stated that he would use force only in self-defense "if someone attacked me and was going to kill me. Then I still wouldn't if there was any way to prevent it." The local board's memorandum of his personal appearance indicated that "[h]e stated that he just does not believe in going into the service at all—that he does not believe in killing anyone." In evaluating this information, the court said:

"We acknowledge * * * that defendant's religious views are not set forth at length or articulately. Yet it is perfectly clear that defendant's timely assertions to his local board, if believed, demonstrate that he was brought up in, and had embraced, the religious tradition of one of his parents, who belonged to a denomination, the members of which have consistently opposed participation in war. Defendant asserted his personal objections, in light of this tradition, to participation in war in any form. He thus presented a prima facie case for exemption." 417 F.2d, at 829.

Of course, even though a registrant makes out a *prima facie* case, the local board may nonetheless legally reject his claim if there is any basis in fact supporting that disposition. The requirement in *Scott* that the board state its reasons for rejecting a conscientious objector claim is necessary to enable those who sit in administrative and judicial review of such a decision to ascertain whether the board acted upon a proper or an erroneous basis. This case illustrates once again the wisdom of the *Scott* rule. While we need not decide whether there are factors in the record which, if stated, would have provided an adequate basis in fact for the board's action, we do note that there are several factors which clearly would *not* have provided such a basis. Among these are:

(a) Appellant's willingness to defend himself or his mother if they were attacked on the street,[9] and

(b) Appellant's non-membership in any religious sect.[10-11]

6. The fact that the board reopened his classification following his personal appearance suggests that they may have felt a *prima facie* case had been presented.

7. 50 U.S.C. App. § 456(j).

8. See also, e. g., United States v. Joyce, 437 F.2d 740 (7th Cir. 1971); United States v. Callison, 433 F.2d 1024 (9th Cir. 1970); United States v. Eades, 430 F.2d 1300 (4th Cir. 1970); United States v. Davila, 429 F.2d 481 (5th Cir. 1970). See also United States v. Mack, 311 F. Supp. 1230 (S.D.N.Y.1970).

9. Sicurella v. United States, supra, note 9.

10. United States v. Seeger, supra, 380 U.S. at 169, 85 S.Ct. 850.

11. There is yet another "fact" in appellant's selective service file which, had the local board indicated its reliance thereon, would have presented some thorny legal problems for this court's consideration. Appellant indicated both in his Classification Questionnaire and at his personal appearance that he had been "convicted or adjudicated" of robbery as a juvenile. In fact, this was not true. He had been

The failure of both the local board and the appeal board to state reasons, however, makes it impossible for this court to intelligently review their determination in light of the foregoing considerations. The induction order, "which resulted from administrative procedures which we have found to be defective," was therefore invalid. "That being so, appellant should never have been indicted. * * * " [12]

The judgment of conviction will be reversed.

ALDISERT, Circuit Judge (concurring).

This appeal dramatizes again the woeful inadequacies of certain selective service regulations, exposes the difficulties encountered by federal courts as they strain to fashion just results in these troublesome cases, and illustrates the problems which are created when, in a desire to achieve a praiseworthy objective, courts tamper with traditional concepts of *prima facie* case requirements.

We announced in Scott v. Commanding Officer, 431 F.2d 1132 (3rd Cir. 1970), that where there is a request for reopening of a classification based on the existence of conscientious objector beliefs, the local board must buttress any denial of such request with a statement of reasons for its action. There is ample justification for this requirement. Because conscientious objector status may be grounded in highly sophisticated beliefs, is extremely subjective in nature, and may, at times, be most difficult to demonstrate by objective standards, the requirement of a statement of reasons serves the dual purpose of affording a modicum of protection to the registrant and of providing a framework for intelligent administrative and judicial review of the board's decision.

Imposing a limitation in its operation, *Scott* mandated the statement of reasons requirement only in cases in which the registrant first establishes a *prima facie* entitlement to conscientious objector status. The majority here find that appellant established a *prima facie* case. I cannot agree.

In selective service cases, a *prima facie* case is present "if a registrant has presented *facts* which, if true and uncontradicted by other information contained in his file, would be sufficient under the regulations to warrant

---

arrested on suspicion of attempted burglary (not robbery) at the age of fifteen, but following a probation officer's investigation of his background and the circumstances surrounding the alleged crime, he had been discharged as to the offense. The true facts became known to officers involved in appellant's pre-induction physical when they checked his juvenile court records. The "Record of Induction" (Form DD47) sent to the local board following his pre-induction physical reflected this new-found information ("Revealed Court Adjudication or Conviction ☐ Yes ☒ No"), but also contained an entry reflecting the prior misinformation ("Convicted or Adjudicated of Crime other than Minor Traffic Violation ☒ Yes ☐ No Robbery, 1963, 1801 Vine St. Probation"). Presumably without the local board's having examined it, this new information was forwarded to the appeal board as part of appellant's file.

Since the local board did not state its reasons for rejecting appellant's claim, we have no way of knowing whether the board attached any significance to his supposed robbery conviction. (We note, however, that the local board secretary testified that " * * * of course accusation is one thing. If it (the robbery charge) was proven I think they (the local board) would probably be inclined to believe that he wasn't a conscientious objector in fact.") We are therefore unable to intelligently deal with the legal issues which would be raised by the board's reliance on that non-existent fact, including:

(1) Whether, even if there had been a conviction, it would provide an adequate basis in fact for the rejection of a conscientious objector claim, see United States v. White, 421 F.2d 487 (5th Cir. 1969) ; and

(2) Whether, on the basis of 32 C.F.R. § 1625.1(b) and United States v. Brown, 436 F.2d 1317 (3d Cir. 1971), the induction center personnel and/or the appeal board were under a duty to call the correct facts to the attention of the local board.

12. United States v. Speicher, supra.

granting his requested classification." United States v. Burlich, 257 F.Supp. 906, 911 (S.D.N.Y.1966).

Hunt v. Local Board No. 197, 438 F.2d 1128, 1144 (3rd Cir. 1971) (dissenting opinion) (emphasis supplied).

In my view, a registrant must establish two separate elements in presenting a *prima facie* case of conscientious objection: he must submit a *factual* statement describing (1) his status, S.S.S. Form 150, Question One, and (2) explaining "how, when, and from whom or from what source" he received the religious training or acquired the belief which is the basis of his claim, S.S.S. Form 150, Question Three.

Certain aspects of appellant's statement of status were contradictory. Responding to Form 150, Question Five, he said that "under no circumstances" did he believe in the use of force. Yet, he informed the board that he had been convicted of robbery, a crime of force. Moreover, he indicated that he would use force to defend himself or his mother from attack. Although Question Five is broadly framed, the true thrust of the inquiry obviously goes to the use of armed military force. Therefore, the contradictions, although pertinent to the question of sincerity, which is not before us, should not detract from a finding that there was an appropriate factual articulation of his conscientious objector status. This I am able to find in his paraphrase of the Biblical passage from Corinthians and in the assertion that military induction would place him in a position of having to kill.

It is the second requirement that, in my view, appellant failed to satisfy. He failed to present an adequate factual description of the process by which he came to his alleged status. He said he attended meetings of Jehovah's Witnesses with his mother, upon whom he relied for religious guidance, "and also congregational meetings," but was careful to emphasize that he was not himself a member of a religious sect. Moreover, he admitted that he never gave public expression, written or oral, to his professed views. In response to the question, "Describe the actions and behavior in your life which in your opinion most conspicuously demonstrate the consistency and depth of your religious conviction," he simply referred to the practice followed by adherents to the Jehovah's Witnesses faith: "I do not celebrate Easter, Christmas, Thanksgiving or any holidays."

I find this sum of alleged facts insufficient to establish a *prima facie* case. From this rambling mélange of utterances, I cannot deduce whether this is a claim based on religious training and belief tied to an association with a religious sect, or whether the claim is based on personal belief having the strength of religious conviction. Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). Appellant's statements do not satisfactorily describe how his beliefs were developed or acquired and, significantly, do not disclose when the maturation of the alleged status either began or was completed.

By definition, a *prima facie* case entails a quantum of *facts* supporting a given legal proposition. Without facts, the case is simply not made. Conclusory averments are insufficient, and a statement of the ultimate legal principle is no substitute for the necessary specifics to support it. Mere averments of lack of due care do not make out a *prima facie* case of common law negligence; nor stark assertions of unseaworthiness, one in admiralty; nor a naked claim of defective design, a 402A products liability case. In each such case sinews of fact must be affixed to bare bones of legal conclusions. Similarly, no registrant should be deemed to have met his burden of proving a *prima facie* case of conscientious objection by saying: "I am a conscientious objector. My mother made me what I am today. I don't belong to any church."

The majority recognize some inadequacy in appellant's presentation. Other-

wise there would be no reason to suggest that appellant possessed "neither the knowledge nor the intellectual wherewithal to synthesize his views." Having previously expressed myself on the complexities of crystallization of conscientious objector views, see Scott v. Commanding Officer, *supra* (concurring opinion), I readily appreciate that there may be difficulties in articulating such beliefs. And I recognize the advantages possessed by those who through personal skill or professional assistance are able to meet the most stringent *prima facie* requirements with elegant language, impressive documentation, and a dossier of corroborative materials. But the conclusion that appellant here did not have the capacity to marshal his views or articulate his beliefs is wholly gratuitous and without evidentiary support. The record discloses that this appellant (1) attended ten years of public schools, (2) was steadily employed thereafter, and (3) at the time of his application was an employee of the Philadelphia Board of Education, assigned to a position, self-styled as that of "disciplinarian," charged with sensitive responsibilities supervising the conduct of teenagers.

That I am unable to accept the majority's finding of a *prima facie* case, however, does not mean that I am dissatisfied with the majority's ultimate disposition of this appeal. Indeed, rather than engage in what I consider to be a distortion of the *prima facie* standard— a distortion which is likely to have broad precedental effect beyond the Selective Service area—I would candidly acknowledge that the *prima facie* test is simply inappropriate in cases such as this. In short, I would dispense with the need to prove a *prima facie* case of conscientious objection in situations in which the *Scott* requirement of a statement of reasons would otherwise apply.

Frankly, I cannot say with certainty why the necessity for establishing a *prima facie* case was inserted as a prerequisite to requiring boards to state reasons for denying conscientious objector claims. A possible explanation lies in the circumstances under which *Scott* arose. The registrant there submitted his claim as a request for reopening, having already been assigned a I-A classification. Perhaps the requirement that a *prima facie* case be made out in order for a registrant to obtain the administrative benefits accompanying a reopening of classification, Mulloy v. United States, 398 U.S. 410, 416, 90 S. Ct. 1766, 26 L.Ed.2d 362 (1970), had a transferable impact on the *Scott* holding. But surely reopening considerations have little to do analytically with the *Scott* rationale. If *Scott* mandates that a local board assign reasons for denying a conscientious objector claim which is presented as a request for reopening, it seems absolutely clear that a board should be required to do the same if the claim were made at the time of an original classification and before any classification were assigned. Certainly, in the latter situation, not involving reopening, *prima facie* notions would not otherwise be involved.

Perhaps, however, the *Scott* rule anticipated the submission of frivolous claims and sought to relieve the local boards of the obligation to set forth reasons when denying insubstantial claims. But I cannot believe that such reasoning would withstand close inspection. A claim which might seem frivolous to a local board might appear of quite different character and substance to a reviewing tribunal. Indeed, this possibility of disagreement is the very *raison d'etre* for review, whether administrative or judicial.

The *Scott* rule was promulgated out of a sense of fundamental fairness. We recognized the difficulties inherent in the expression of conscientious objector status and believed that a registrant should be entitled to be apprised of the reasons for a board's denial of his claim.

For the purposes of appeal, the registrant should know whether the denial resulted from an inadequate presentation of often complex religious-psychological-sociological attitudes, or whether the denial was based on disbelief or findings of insincerity. At the same time, we recognized the difficulty of enlightened and informed administrative or judicial review in the absence of actual findings by the local board.

I would, therefore, dispense with the *prima facie* requirement and extend the *Scott* rule to every instance in which a Form 150 has been completed and duly and timely forwarded to the local board. I would make mandatory the filing of written reasons for denial of any such request for conscientious objector status, whether presented in the original instance or couched in the form of a request for reopening of status. The holding in our case of United States v. Speicher, 439 F.2d 104, 108 (3rd Cir. 1971), though compromised by other statements referring to the *prima facie* requirement, would seem to require as much. "Our holding is that in post-1967 cases, when neither the Local Board nor the Appeal Board states its reasons for denying a conscientious objector claim, the induction order is invalid."

No constitutional or statutory restriction inhibits the extension of the *Scott* rule, which is, in effect, a judicially engrafted regulation designed to fill the void in existing regulations. It should not escape notice that despite the recent proliferation of selective service litigation dealing with various aspects of administrative practice, the Selective Service System apparently has not deemed it necessary to undertake needed reexamination of its existing regulations. Until the System performs this obviously needed review, the judiciary will continue to find it necessary to seek greater administrative and procedural fairness by filling the interstices of official regulations.