**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lawrence Wayne JOHNSON, Defendant-Appellant.**

**No. 71–1475.**

United States Court of Appeals,
Ninth Circuit.

March 30, 1972.

Michael R. Rayton (argued) of Ryan, Carlson, Bush & Swanson & Hendel, Seattle, Wash., for appellant.

Ernest Scott, Jr., Asst. U. S. Atty. (argued) Susan L. Barnes, Asst. U. S. Atty., Stan Pitkin, U. S. Atty., Seattle, Wash., for appellee.

Before DUNIWAY and TRASK, Circuit Judges, and LUCAS,* District Judge.

* Honorable Malcolm M. Lucas, United States District Judge for the Central District of California, sitting by designation.

LUCAS, District Judge.

Appellant was convicted of violating 50 U.S.C. App., § 462(a), and 32 C.F.R. 1632.14 for his refusal to submit to induction into the armed forces as ordered by his local draft board. On appeal, he alleges that the trial court erred in finding that the local board properly refused to reopen his classification upon his submission of a "Special Form for Conscientious Objectors," Selective Service System Form 150. We affirm that finding.

Appellant registered with Local Board No. 6 of the Selective Service System at Seattle, Washington, on June 18, 1965. After receiving several deferments, on February 23, 1968, he was reclassified from II–S to I–A and advised of his right to ask for an appeal or personal appearance. On February 27, 1968, Local Board No. 6 received appellant's request for an appeal and a personal appearance before the Board. The Board advised appellant of a personal appearance to be held before it on April 15, 1968. On that date, the appellant appeared before the Board and advised it in writing that he would like to be classified as a conscientious objector. Apparently, it was during that appearance that the appellant received SSS Form 150 "Special Form for Conscientious Objectors." Appellant completed and returned this form. As part of filling in this form appellant furnished the names and addresses of six individuals who could supply information as to the sincerity of his professed convictions. None of these references wrote to the Board, or spoke to the Board, although they were requested to do so. On June 3, 1968, the Local Board considered appellant's request for a conscientious-objector classification. The Board refused to reopen his classification, citing the following reasons: (1) applicant's claim was "not based on religious beliefs;" (2) applicant presented his claim "after he realized he did not qualify for

student deferment;" and (3) applicant's "references given in Series V did not substantiate his claim upon our letter of request." The Appeal Board unanimously upheld the decision thus leaving appellant in Classification I–A. Appellant objected in writing to the Washington State Director of Selective Service, and was afforded a "courtesy interview" by the local board to allow him an opportunity to elaborate his claim for conscientious-objector exemption. Appellant also was reminded to contact his references at this time. At no time did the Board receive any communications from appellant's references. In September 1968 the appellant reappeared before the board and explained the basis for his claim for exemption. His request to reopen classification was denied. On March 4, 1969, an order to report for induction was mailed. On April 8, 1969, the Army reported that the defendant refused to be inducted.

At the time of trial, appellant entered a plea of guilty. Prior to sentencing, the Supreme Court had granted certiorari in Welsh v. United States, 404 F.2d 1078 (9th Cir., 1968) to determine the extent of conscientious objection based on non-religious grounds, and the district court stayed sentencing of appellant pending the outcome of that case. After the Court's decision in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970) appellant was allowed to withdraw his guilty plea, and moved to dismiss the information alleging that his file qualified him for rehearing on his conscientious-objector status under the standard developed by Welsh. The motion was denied. Appellant waived his right to jury trial, and, after court trial, on February 12, 1971, the court pronounced him guilty.

Appellant raised three questions on appeal: (1) whether appellant's files presented a prima facie case for conscientious-objector status; (2) whether, given a prima facie case, the board was required to reopen the determination of his classification; and, (3) whether, given a prima facie case, evidence in the record supports the finding of insincerity by the board.

These questions turn on the principal issue whether the appellant's record as a whole, particularly his SSS Form 150, presented a prima facie case for exemption as a conscientious objector. Inasmuch as this court holds that a prima facie case was not sufficiently set forth, the remaining questions posed are not reached.

The statutory exemption for conscientious objectors is set forth in Section 6 (j) of the Universal Military Training and Service Act, 50 U.S.C. App. § 456(j), which exempts from combatant training and service in the armed forces those individuals who by reason of their "religious training and belief" are conscientiously opposed to participation in armed conflict. Expressly excluded from this exemption are those who profess views which are essentially "political, sociological, or philosophical" or which are merely a "personal moral code." This court is guided by the standards initially outlined by the Supreme Court in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965) and as amplified in *Welch, supra,* in examining appellant's total record. The test was set forth, with respect to determining the necessary conviction in one's belief as a conscientious objector, as

"[a] sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption. . . ." *Seeger,* at 176, 85 S.Ct. at 859; *Welsh,* 398 U.S. at 339, 90 S.Ct. 1792, *supra.*

That portion of appellant's file which capsulizes the statement of his belief is contained in Series II of his SSS Form 150, where, in response to the inquiry that he describe the nature of his belief which is the basis of his claim, he replied: "I believe my own conscious (sic) to be my Supreme Being and that it is also Superior to duties arising from any

human relation."[1] This court is provided some guidance by the language and reasoning of its earlier opinion. United States v. Moore, 423 F.2d 556 (9th Cir., 1970) which, although decided in the interim between *Seeger* and *Welsh*, incorporated the thrust of the latter decision in disposing of a similar question with respect to the characterization of an applicant's beliefs. *Moore* emphasized the language in *Seeger* which was adopted and followed in *Welsh* as the "test" of belief for qualifying as a conscientious objector. *Moore*, at 558. Moore, in describing his "belief," expounded at length essentially on the same theme presented by appellant in the instant case. This belief, when stripped of its laudable rejections of war and conflict, can be reduced to an essential affirmation of faith in one's self, subordinating even those relationship with others to the concept of self. Such a credo would seem to preclude a belief parallel to that filled by an orthodox belief in God, and would seem to be essentially a "kind of individual self-determination." *Moore*, at 558. Beyond this level, the court cannot speculate. At this point, third-party interpretations of the different facets of appellant's convictions would have been critical. However, appellant did not meet this burden of providing supplementary elaboration on the characterization of his beliefs. To allow the court to presume what might have emerged, either through supplementary responses provided by the appellant, or through supporting letters of reference which might have provided crucial insight, would be for it to fashion appellant's position.

Appellant seeks to draw a close parallel with the characterization of the belief held to qualify as an exemption in *Welsh*, noting with particularity the experiences of childhood religious training, notwithstanding the abbreviated statements offered by the appellant to communicate his beliefs. *See Welsh*, 398 U.S. at 341, 90 S.Ct. 1792. However, a determination of an applicant's beliefs is not limited to his statements, but covers his entire application. And, in *Welsh*, the court based its holding that he was entitled to conscientious-objector status on an *elaboration* of his beliefs later communicated to the Service officials, and on this court's conclusion that he held them " 'with the strength of more traditional religious convictions,' 404 F.2d, at 1081. . . ." *Welsh*, at 343, 90 S.Ct. 1798. In the instant case, appellant failed to elaborate sufficiently those characterizations, even though given ample opportunity to do so. Elaboration might have lent the requisite conviction to the argument that his behavior was governed by a superior moral force parallel to that occupied by an orthodox belief in a God. There is a significant absence of supporting material in this case for this court to find that appellant professes his belief with " 'the strength of more traditional religious convictions. . . .' " *Welsh*, at 343, 90 S.Ct. at 1798.

Elaboration was crucial in Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), another case relied upon by appellant but which is distinguishable on its facts. In that case, the court emphasized, as evidence of "new information," five letters written in support of the petitioner, noting

"it is clear that the petitioner's SSS Form 150 and the accompanying letters constituted a prima facie showing that he met the statutory standard for classification as a conscientious objector. . . ." *Mulloy*, at 417, 90 S.Ct. at 1771.

Appellant submitted no supporting letters; it cannot be said that "new factual allegations" were presented which "were not conclusively refuted" by other information on file. *Cf.* Mulloy, at 418, 90 S.Ct. 1766.

Appellant's written and oral statements were so wedded to what amounts to a self-serving personal creed that it is very difficult for this court to conclude that such "amount to an assertion that

---

1. See Appendix A for the relevant portions of appellant's answers to SSS Form 150.

his beliefs were 'deeply held' and, 'that his conscience would give him no rest or peace' if he were forced to become involved in war."[2] *Cf.* United States v. Coffey, 429 F.2d 401, 405 (9th Cir., 1970). Nor is the court convinced that the totality of the circumstances merit the conclusion reached by the Third Circuit in United States v. Stephens, 445 F.2d 192 (3d Cir., 1971) that the individual possessed "neither the knowledge nor the intellectual wherewithal to synthesize his views. . . ." *Stephens*, at 195. This court is not prepared to adopt the holding in that case which may well be based on "a distortion of the prima facie standard. . . ." *Stephens*, at 199. The circumstances of this particular case are such that this court cannot confidently infer that sufficient information was forwarded by the appellant to make out at least a prima facie case that he was one "who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form." 50 U.S.C. App. § 456(i).

The circumstances of this case are not such that the court would be inclined to anticipate what might transpire should the appellant merely be allowed more time to develop the technique of communicating his convictions, as in *Stephens, supra*. For the court to presume to what depth and for which purpose the appellant holds his belief would be for it to preempt his right of expression and burden of communication. It is presumed that the same prerequisite of supporting facts is necessary for a *Welsh* affirmation as were necessary for those alleging a more orthodox persuasion. Underlying the *Welsh* standard is a recognition of the possibility that the individual may not be able to adequately convey the depth or purpose of his conviction. Thus, recourse to external sources has been expressly provided; those acquaintances intimate with the individual could provide a dispositive illumination of the individual's practice of his belief. *See* United States v. Callison,

433 F.2d 1024, 1026–1027 (9th Cir., 1970). Consequently, inadequate or inarticulate expression would not be deemed tantamount to shallowness of conviction or misdirection of purpose just as superabundance of rhetoric would not necessarily be equated with deep and abiding moral dedication. In this case, no supplementary material was presented by which the board could properly gauge the *depth* of appellant's convictions, or ascertain the *purpose* of his statements. We are left with an inadequate framework of facts at the threshold which simply does not flesh out the *Welsh* standard. As appellant's file stands there are insufficient facts presented to support the conclusion that his objection to participation in the armed services was founded on a consistent and deep conviction in a belief comparable with and parallel to that filled by an orthodox belief in God, rather than on a largely self-determined, personally defined code of conduct. Accordingly, this court is obliged to agree with the finding that under the circumstances his application did not set forth a prima facie case for exemption as a conscientious objector.

## APPENDIX A

### *Series I of SSS Form 150*

"I am by reason of my religious training and belief, conscientiously opposed to participation in war in any form and I am further conscientiously opposed. to participation in noncombatant training and service in the Armed Forces. I, therefore, claim exemption from both combatant and noncombatant training and service in the Armed Forces."

### *Series II of SSS Form 150*

1. Do you believe in a Supreme Being?

*Answer:* "I don't know."

2. Describe the nature of your belief which is the basis of your claim made in Series I above, and state whether or not your belief in a Supreme Being involves

---

2. For example, in his "courtesy interview" appellant noted that "he has the right to do what he wants as long as he doesn't hurt anyone."

duties which to you are superior to those arising from any human relation.

*Answer:* "I believe my own conscious (sid) to be my Supreme Being and that it is also Superior to duties arising from any human relation.

3. Explain how, when, and from whom or from what source you received the training and acquired the belief which is the basis of your claim made in Series I above.

*Answer:* "It was in church as a child. I was as a child oriented (sic) into my beliefs. From my childhood on I have also acquired more strong convictions, and new thoughts on the subject, all serving to reinforce my original training."

4. Give the name and present address of the individual upon whom you rely most for religious guidance.

*Answer:* "Lawrence W. Johnson, 9247 N.E. 180th, Bothell, Washington, 98011."

5. Under what circumstances, if any, do you believe in the use of force?

*Answer:* "I do not, can not, and will not use physical force to harm anyone. I do believe in diplomatic Power to solve conflicts that may arise among peoples on this earth."

6. Describe the actions and behavior in your life which in your opinion most conspicuously demonstrate the consistency and depth of your religious convictions.

*Answer:* "This question is impossible to put into words on this paper. If you are sincer (sic) in wanting to find out the answer to this question, you can follow me through my daily routine for awhile and decide for yourself."

7. Have you ever given public expression written or oral, to the views herein expressed as the basis for your claim made in Series I above? If so, specify when and where.

*Answer:* "Yes, I stand at the University of Washington's Vigil for Peace in Vietnam on Wednesdays."

*Series IV of SSS Form 150*

1. Have you ever been a member of any military organization or establishment? If so, state the name and address of same and give reasons why you became a member.

*Answer:* "No."

2. Are you a member of a religious sect or organization?

*Answer:* "No."

3. Describe your relationships with and activities in all organizations with which you are or have been affiliated, other than military, political or labor organizations.

*Answer:* "Every organization is military, political, or labor, so I can't answer this question."

DUNIWAY, Circuit Judge (dissenting):

I dissent because I am convinced that Johnson did present a *prima facie* case for classification as a conscientious objector. I assume, although I do not necessarily agree, that his answers to the questions in the SSS Form 150 were insufficient. But there is more. At the September 16 "courtesy interview", Johnson enlarged upon his beliefs. The draft board's summary of the interview states:

"Registrant appeared as requested. Oath administered by Mr. Bruce, Chairman. CO questions were answered.

"Registrant stated that he feels the idea of killing or helping to kill anyone is against his beliefs. He doesn't feel that he has the right to kill and that he has the right to do what he wants as long as he doesn't hurt anyone. He was baptized Lutheran but does not attend the church now. He does believe in and would call the police in case of trouble, but although he had thought of being a member when younger, he would not join now. He believes in the Fire Department. He is against war. He used to believe

in a Supreme Being, but now he is not sure. There might be a Supreme Force. He doesn't believe that church-going is a requisite, since many people don't enact their beliefs whereas he believes he does enact his beliefs. He would accept alternate service if it helped people and helped to stop violence. The registrant is not employed and has attended 3 years of college.

"Members asked registrant to submit letters from the references given in SSS Form 150. They advised he would not be placed in class I–O on the basis that his claim is not [sic] on religious training and belief as required by the statue [sic]. They will review the file again after the letters are received.

"Was advised that classification was not to be reopened."

In my opinion, Johnson's statements, considered together with his answers to the questions in the SSS Form 150 do state a *prima facie* case, and the board should have reopened his classification.

1. *The test for determining whether a registrant's classification should be re-opened.*

In Mulloy v. United States, 1970, 398 U.S. 410, 416–417, 90 S.Ct. 1766, 1771, 26 L.Ed.2d 362, the Supreme Court established the following test for determining whether a registrant's classification should be re-opened.

"Where a registrant makes non-frivolous allegations of facts that have not been previously considered by his board, and that, if true, would be sufficient under regulation or statute to warrant granting the requested reclassification, the board must reopen the registrant's classification unless the truth of these new allegations is conclusively refuted by other reliable information in the registrant's file.

.   .   .   .   .   .

"Because of the narrowly limited scope of judicial review available to a registrant, the opportunity for full administrative review is indispensable to the fair operation of the Selective Service System. Where a prima facie case for reclassification has been made, a board cannot deprive the registrant of such review by simply refusing to reopen his file.

.   .   .   .   .   .

"The Government suggests  .  .  . that the board might have concluded that the prima facie claim had been undercut by the petitioner himself— by his statements at the courtesy interview or because his demeanor convinced the board that he was not telling the truth. There is, however, but scant evidence in the record that the board's action was based on any such grounds. And, in any event, it is on precisely such grounds as these that board action cannot be predicated without a reopening of the registrant's classification, and a consequent opportunity for administrative appeal.

"This is not to say that on all the facts presented to it the board might not have been justified in refusing to grant the petitioner a I–O classification; it is to say that such refusal could properly occur only after his classification had first been reopened."

It obscures analysis to dispose of the present case, as the majority does, by comparing its facts to those in *Mulloy*. The Supreme Court indicated in *Mulloy* that the case before it was well within the test applied by the Court, but it did not state that facts less overwhelming than those in *Mulloy* would automatically fall outside the test. Thus, I think the focal point of analysis should be the test used in *Mulloy*, and not the facts in *Mulloy*.

To determine whether appellant satisfies the test in *Mulloy* we should first decide whether appellant has stated a *prima facie* case for reopening his classification, and second, whether the facts which form the basis of his *prima facie* case are conclusively refuted by other reliable information in his file.

2. *Whether appellant has stated a prima facie case.*

To answer the first inquiry, whether appellant has stated a *prima facie* case, I turn to United States v. Seeger, 1965, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, and Welsh v. United States, 1970, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308. The facts of those two cases and the present one are strikingly similar in several important respects. As the Court noted in *Welsh:*

"Both Seeger and Welsh were brought up in religious homes and attended church in their childhood, but in neither case was this church one which taught its members not to engage in ·war at any time for any reason. Neither Seeger nor Welsh continued his childhood religious ties into his young manhood, and neither belonged to any religious group or adhered to the teachings of any organized religion during the period of his involvement with the Selective Service System. At the time of registration for the draft, neither had yet come to accept pacifist principles. Their views on war developed only in subsequent years, . . ." 398 U.S. at 335–336, 90 S.Ct. at 1794. "[N]either could definitely affirm or deny that he believed in a 'Supreme Being,' both stating that they preferred to leave the question open. But both Seeger and Welsh affirmed on those applications that they held deep conscientious scruples against taking part in wars where people were killed. Both strongly believed that killing in war was wrong, unethical, and immoral, and their consciences forbade them to take part in such an evil practice." *Id.* at 337, 90 S.Ct. at 1795.

Of most importance in the present case is the *Welsh* Court's treatment of the question what constitutes "religious belief" within the meaning of the Selective Service Laws. The government had argued that *Welsh* was distinguishable from *Seeger* because Seeger had merely placed quotation marks around the word "religious" whereas Welsh had struck the word "religious" entirely. From this the government argued that Welsh's views, unlike Seeger's, were "essentially political, sociological, or philosophical views or a merely personal moral code." A belief based on such views disqualifies one for conscientious objector status. 50 U.S.C. App. § 456(j). The Court, however, concluded that "[w]hat is necessary under *Seeger* for a registrant's conscientious objection to all war to be 'religious' within the meaning of § 6(j) is that this opposition to war stem from the registrant's moral, ethical, or religious beliefs about what is right and wrong and that these beliefs be held with the strength of traditional religious convictions." *Id.* at 339–340, 90 S.Ct. at 1796.

As a matter of substance I think that Johnson's claim is no weaker than those in *Seeger* and *Welsh,* and in at least one respect is stronger than the claim in *Welsh.* Like Seeger and Welsh, Johnson indicated that he was unsure whether there was a Supreme Being. At his courtesy interview he indicated that there might be a Supreme Force. Like Seeger and Welsh, Johnson had attended church as a child, but was not a member of any organized religion at the time that he applied for conscientious objector status. And like Seeger and Welsh, Johnson stated categorically that under no circumstances could he take the life of another human being. Finally, in contrast to Welsh, Johnson stated that he had acquired the belief which formed the basis of his claim in "church as a child." Welsh indicated that his beliefs had been formed by "reading in the fields of history and sociology." 398 U.S. at 341, 90 S.Ct. at 1797. On the basis of the similarities between the present case and *Welsh* I find it impossible to conclude that Johnson has not stated a *prima facie* case.

This case differs from *Seeger* and *Welsh* in two respects. First, Johnson's answers to the SSS Form 150 questions were both meager and flippant. This might be a basis for a board finding that he was insincere. The board's first disposition of his CO claim hints at such a finding. But I see neither flippancy, nor any other evidence of insincerity in what Johnson said to the board at the September 16 interview. What I do see is a better statement of his views, without the flippancy. I note, too, that the board did not, at that interview, find him insincere. It rested refusal to reopen solely on its conclusion that his views were not founded on religious training or belief.

Second, Seeger and Welsh were far more articulate than Johnson and went into greater detail about their beliefs than did Johnson. However, a registrant's inability to express himself well or apparent general lack of intelligence do not prevent his stating a *prima facie* case. *See generally* United States v. Mount, 9 Cir., 1970, 438 F.2d 1072; United States v. Stephens, 3 Cir., 1971, 445 F.2d 192; United States v. Garvin, 7 Cir., 1971, 438 F.2d 1054; United States v. Joyce, 7 Cir., 1971, 437 F.2d 740; United States v. Callison, 9 Cir., 1970, 433 F.2d 1024; United States v. Davila, 5 Cir., 1970, 429 F.2d 481; United States v. Lamberd, W.D.Mo., 1970, 315 F.Supp. 1362.

The majority relies heavily on our decision in United States v. Moore, 9 Cir., 1970, 423 F.2d 556. As the author of the opinion in that case, I can hardly object to its whole-hearted acceptance by my brethren. *Moore,* however, was decided after *Seeger* but before *Welsh.* I am convinced that *Moore* cannot survive *Welsh*—that if *Welsh* stated a *prima facie* case, as the Supreme Court has held, then *Moore* did too.[1]

For this reason I think that we should now follow United States v. Callison, *supra,* which was decided after *Welsh.* In *Callison* the appellant's conscientious objector claim was rejected by his local board with the following statement:

"From a review of the statements in this form, you stated that your beliefs were part of your conscience, and that you did not know whether or not you believed in a Supreme Being. In no place did you state your objections to war were based on any religious training or belief. From this, the Board could only assume that yours was purely a philosophical view or moral code and not one based on religious grounds." Quoted in 433 F.2d at 1026.

In claiming conscientious objector status Callison had stated in SSS Form 150, " 'My beliefs and my conscience makes it impossible for me to engage in the systematic killing of other human beings.' " He further indicated that " 'I believe that I'm part of a human consciousness to which I would do immoral violence by killing people, or helping others to kill people.' " Quoted at *Id.*

On those facts we held that Callison had stated a *prima facie* case under *Welsh,* notwithstanding the fact that his views had apparently been set forth in rather abbreviated form. On its face, Johnson's case is no weaker than Callison's, and actually is somewhat stronger in that Johnson explicitly stated that the beliefs which form the basis of his objection were formed in church as a child.

Thus, I conclude that Johnson, on the strength of *Seeger* and especially of *Welsh,* has satisfied the first half of the *Mulloy* test—i. e., if the facts he stated in his form 150, plus what he told the

---

1. I commend to judges who may find themselves in my position the delightful concurring opinion of Mr. Justice Jackson in McGrath v. Kristensen, 1950, 340 U.S. 162, 176–178, 71 S.Ct. 224, 233, 95 L.Ed.

173. Like Baron Bramwell, whom he quotes, I find that "[t]he matter does not appear to me now as it appears to have appeared to me then."

board at the interview, are true, he has made out a *prima facie* case for having his classification reopened. I also conclude that we should look to *Callison* rather than *Moore* for guidance. I think that Welsh did have an effect in this area of law beyond that which resulted from the Court's decision in *Seeger,* and that *Callison* accurately reflects that additional impact in a way that *Moore* does not.

The second half of the Court's test in *Mulloy* remains to be considered: Whether there is other information in the registrant's file that "conclusively refutes" the allegations that form the basis of his *prima facie* case. 398 U.S. at 416, 90 S.Ct. 1766.

As I have already noted, the board did not purport to base its decision on any ground other than its opinion that Johnson's claim was not based on religious training and belief. It made no finding that Johnson's belief was not sincere or not deeply held. *Cf.* United States v. Coffey, 9 Cir., 1970, 429 F.2d 401. Under *Mulloy,* such a finding would have no effect unless the evidence supporting it *conclusively* refuted Johnson's claim. I cannot find evidence of that character in Johnson's file. By that I do not mean that there is no evidence pointing to insincerity. There is some: the flippancy of some of the answers on the SSS Form 150, and the failure of any of his references to respond. But the timing of the application is not such evidence. The courts have universally held that a registrant's application for conscientious objector status after he realizes that he no longer qualifies for a student deferment cannot serve as the basis for a finding of lack of sincerity. *See, e. g.,* United States v. Bornemann, 2 Cir., 1970, 424 F.2d 1343.

The existence of such non-conclusive evidence cannot support a failure to reopen. *Mulloy,* quoted above, is explicit in so holding.

I would reverse.