432 F.2d 1182
 UNITED STATES of America ex rel. John F. HEMES, Petitioner-Appellant,
v.
Major Donald McNULTY, Commanding Officer, Armed Forces Entrance and Examining Station, Milwaukee, Wisconsin, Respondent-Appellee.
 No. 18395.
 United States Court of Appeals, Seventh Circuit.
 September 9, 1970.
 
 Sander N. Karp, Milwaukee, Wis., for petitioner-appellant.
 David J. Cannon, U. S. Atty., Terry E. Mitchell, Asst. U. S. Atty., Milwaukee, Wis., for respondent-appellee.
 Before FAIRCHILD and PELL, Circuit Judges, and ESCHBACH, District Judge.[1]
 PELL, Circuit Judge.
 
 
 1
 Petitioner-appellant, John F. Hemes, registered with Winnebago County Local Board 79, Wisconsin, on November 5, 1964. After he received various classifications, which are not deemed material here, on November 14, 1968, he was classified 1-A. Following the classification, he requested and was granted a personal appearance before the board. The local board declined to reopen the classification on January 16, 1969.
 
 
 2
 On February 18, 1969, Hemes, by letter, requested SSS Form 150, Special Form for Conscientious Objectors, which was executed and returned to the board on March 19, 1969. There was no previous indication in the board's file, or in the record before us, of a claim of a conscientious objector status.
 
 
 3
 On April 17, 1969, the local board again classified Hemes 1-A. On June 17, 1969, he appeared personally before the board. Prior thereto several persons had sent letters in support of Hemes' claim for status as a conscientious objector. Immediately prior to his personal appearance, he presented a written summary of his position. Following his personal appearance he was again classified 1-A. Thereafter he was ordered to report for induction. Following unsuccessful efforts to appeal within the framework of the Selective Service System procedures, he reported for induction on March 9, 1970 and completed the induction ceremony, after which he filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Wisconsin. That court dismissed the petition and the matter before us is the appeal from the dismissal.
 
 
 4
 The Military Selective Service Act of 1967, 50 U.S.C.App. § 451 et seq., and its predecessor statute provide that decisions of the local board are "final." This has been construed to mean that Congress chose not to give administrative action under the statutes the customary scope of judicial review obtaining under other statutes, that the courts are not to weigh the evidence to determine whether a classification made by the local board was justified and that decisions of the local board made in conformity with the regulations are conclusive even though they may be erroneous. Nevertheless, notwithstanding the purported finality, the Supreme Court has established that there may be judicial review if there is no basis in fact for the classification given the registrant. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). This court has recently reached the result foreshadowed by Dickinson v. United States,[2] 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953), and which has been reached in varying degrees in other circuits.[3] United States v. Lemmens, 619 F.2d 430 (7th Cir. 1970).
 
 
 5
 In Lemmens we stated the matter as follows (at p. 8):
 
 
 6
 "We are persuaded that where the validity of a classification rejecting a claim as conscientious objector is an issue, and where the registrant described a belief which on its face fulfilled the legal requirements, the board did not state its reason for rejection, and the court can not otherwise determine with any degree of assurance that the decision really made by the board properly supported the rejection and had a basis in fact, the court should hold the classification invalid."
 
 
 7
 Adhering to the foregoing guiding principle we must now turn to the record in the case before us to determine whether Hemes described a belief which on its face fulfilled the legal requirements[4] and if so we must then further determine whether there is anything in the record which with any degree of assurance supports the board's decision. We are not unmindful that it is not for the courts "to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should [the courts] look for substantial evidence to support such determinations." Witmer v. United States, 348 U.S. 375, 380, 75 S.Ct. 392, 395, 99 L.Ed. 428 (1955). In his SSS Form 150, Hemes in part stated the following:
 
 
 8
 "My religious training and belief stems from an intuitive feeling based upon my relationship with other people. I believe that man has an eternal quality within him; there is something about man that sets him appart from the rest of the animals on this earth. The greatest distinguishing quality of man is his ability to love. It is man's ability to know love and enter into love relationships. This totally human characteristic is my concept of God. My God is the God of love and this force is present in every individual. My belief that God is love is totally humanistic in character and is the foundation of my personal moral code."
 
 
 9
 Hemes also pointed out that his parents were "diligent Catholics" and he was raised in that faith, attending some parochial and some public schools. He further stated, "In my senior year [of high school], I severed relations with the Catholic Church. I have not gone back nor do I have any desire to do so." After referring to the impact upon his beliefs of a high school teacher, he stated that during this time "I was fired-up about religious concepts; since then my religious concern has mellowed to an inner glow based on love and is people orientated. I have traced the evolutionary development of my present religious beliefs based upon past training and beliefs. I think that it is important to note that the evolutionary process does not stop here; my beliefs are subject to change. Sometime in the future organized religion may once again become pertinate [sic] to my life."
 
 
 10
 In both his form 150 and in a subsequently submitted written summary, Hemes emphasized that while he was not capable of and was refusing to enter military service or to participate in war in any form because of his religious beliefs, he was hopeful that he would be allowed to serve his country through civilian alternate service. The local board's file also contains letters from Hemes' father, two teachers and two friends all testifying in effect to a belief in his sincerity. Hemes, as well as the local board, prepared a statement concerning his personal appearance before the board on June 17, 1969. There is no substantial dispute factually between the two statements. It appears that after Hemes read the summary of his religious belief he asked the board if they had any questions regarding his response to the form or any questions in general and they had none.
 
 
 11
 The question was asked of the board as to the criteria used to determine the validity or sincerity of a conscientious objector applicant to which the board replied that their decision was based on the applicant's response to SSS Form 150. Hemes' outline of his personal appearance also indicated that he asked the board if he met the requirements, to which there was no response, and that if he didn't, what more could he do to convince the board that he was sincere in his beliefs. To this also there was no response. He further indicated that the interview lasted approximately ten minutes. The last mentioned phrases appearing in Hemes' outline of his personal appearance are neither confirmed nor denied by the board's summary but since they were placed in the registrant's file without comment we may assume that matters stated were substantially correct.
 
 
 12
 The ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form. Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428 (1955). See also, Welsh v. United States, 389 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), for the latest interpretation of religious beliefs.
 
 
 13
 To qualify for the conscientious objector classification it is not necessary to belong to an orthodox religious sect. The test of religious belief within the meaning of the statute is whether it is a sincere and meaningful belief, occupying in the life of its possessor a place parallel to that filled by the God of those admittedly qualified for the exemption. The local board is not free to reject beliefs because they consider them incomprehensible but their task is to decide whether the beliefs professed by a registrant are sincerely held and whether they are, in his own scheme of things, religious. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).
 
 
 14
 The Court in Seeger further pointed out not only the standard but the difficulty of application thereof as follows, at p. 184, 85 S.Ct. 850, 863:
 
 
 15
 "Moreover, it must be remembered that in resolving these exemption problems one deals with the beliefs of different individuals who will articulate them in a multitude of ways. In such an intensely personal area, of course, the claim of the registrant that his belief is an essential part of a religious faith must be given great weight."
 
 
 16
 Certainly many local boards must be confounded by the semantical problems involved in distinguishing between "a merely personal moral code" and religious belief, without benefit of orthodox sect backing, of a "sincere and meaningful" type. Indeed, Hemes refers to his particular belief as being the foundation of his "personal moral code." Nevertheless, applying as we must the standards laid down by Seeger and Welsh, it would appear that Hemes had made out a prima facie case of religious belief. His statements to the board, on the one hand, may be artfully extracted from literature he has read and not be sincere but merely be based upon a personal desire to avoid military service. On the other hand, the beliefs expressed by him may be entirely sincere and have been arrived at through study and soul-searching. The point is that we are unable to discern which predication is here involved and absent the ability to do so we must perforce sustain the position of Hemes on this appeal.
 
 
 17
 There is nothing before us to indicate whether the local board determined that Hemes was not sincere or whether, conversely, the issue was decided against him on an improper ground. It is significant in this respect that in the board's file the following statement accompanying the Form 150 was underlined: "In my senior year, I severed relations with the Catholic Church. I have not gone back nor do I have any desire to do so." Hemes asserts that the local board underlined the sentences and this is not denied by the respondent. This might be the basis for a belief that the board was adhering to a pre-Seeger doctrine of requirement of belonging to an established religious sect.
 
 
 18
 The only other indication in the file of the basis for the board's decision is its own statement that the decision was based on the SSS Form 150. We fail to discern any reason even by reading between the lines for casting doubt on the sincerity insofar as Form 150 is concerned.
 
 
 19
 We do not here purport to reach any determination as to whether Hemes should have been classified as a conscientious objector. This is a matter for the determination of the board and is not within the scope of our limited review. The issuance of the writ which must follow in this case in no way precludes the local board from reconsidering Hemes' file and determining whether under the law he is entitled to the conscientious objector classification.
 
 
 20
 We do not lightly reach the position of overturning a Selective Service Board determination. The people who compose the local boards, performing as they do a somewhat thankless task, must of necessity be loyal and dedicated citizens engaging in a patriotic and civic duty. While it is true that the local boards have certain powers such as that of subpoena, securing information from other governmental agencies, questioning the registrant under oath and requiring the production of documents, see Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132 (1953), the board members, all volunteers, are not in the position by the very nature of the Selective Service System to engage in court-like proceedings and when judicial scrutiny is given to their actions it should be basically on the narrow issue of whether there is any apparent basis for it.
 
 
 21
 We are also not unmindful of personal relationship difficulties imposed upon members of local boards. In many instances, particularly in smaller communities, the volunteer members are called upon to pass on the sincerity of a neighbor's son. Perhaps it is natural and human to desire to avoid the confrontation involved in a direct statement that the board has found the applicant for the status to be insincere. Nevertheless, in this delicate area, the duty imposed upon and undertaken by the members of the board may require this. While we have carefully refrained from imposing any requirement on boards that they promulgate a court-like formal finding of facts and are of the opinion that the "basis in fact" may be otherwise determined, nevertheless, where the ultimate issue is the sincerity of the applicant, often times objective facts may not appear in the file. It would therefore appear to be desirable practice that the board, if it is denying the status claimed because of its belief in the lack of sincerity in the applicant, should state that fact and at least briefly summarize in the record those facts, whether they be inconsistencies in action or written statements, shifty or evasive demeanor, appearance of unreliability, lateness of claim or any other factors reasonably causing the board to reach its conclusion.
 
 
 22
 In support of the board's position, the respondent urges that the file does show a basis for insincerity in the fact that Hemes did not assert his conscientious objection claim until he had lost his student deferment. Inasmuch at this court suggested in United States v. Lemmens, 430 F.2d 619 (7th Cir. 1970), late timing of the claim combined with brevity of claim might not suffice as a basis in fact, we do not mean on the other hand that a tardy claim of conscientious objector status may not be a factor which enters into the board's deliberations. Indeed, it can be conceived that a belated application in certain factual situations could be most persuasive. Each case will have to be judged on its own facts. An acceptable guideline in this respect is stated in United States v. Broyles, 423 F.2d 1299, 1305 (4th Cir. 1970), as follows: "To the extent that Campbell and Gaston[5] hold that inadequately explained lateness in the assertion of a claim of conscientious objection constitutes evidence which a board may consider in passing upon the validity of the claim, we leave them untouched. However, it is not now and never has been our view that lateness as a matter of law requires the rejection of the claim."
 
 
 23
 In this appeal Hemes also contends that the local board erred in classifying him I-S(C) on November 10, 1966, contending that he was a full time undergraduate student on that date and was therefore entitled to a classification of II-S. The gist of the complaint is that I-S(C) classification can be granted only once and therefore Hemes might be prevented from taking advantage of this classification at a later date when he might use it to a better advantage.
 
 
 24
 There is no showing that Hemes was deprived of any rights or prejudiced in any manner by the alleged misclassification. Certainly it has no material bearing on the present habeas corpus proceedings as it did not reflect upon or bring about his induction. Where no harm or prejudice resulted from a violation of a regulation, if such did occur, the proceedings of the board are not invalidated. United States v. Primous, 420 F.2d 33 (7th Cir. 1970). In the event that at some later time he should be a student otherwise eligible for I-S(C) and should his local board at that time deny him that classification because of his having previously been the recipient thereof, then the alleged deprivation would be out of the realm of the theoretical. The local board would then be in a position to determine upon the facts whether he should be entitled to the I-S(C) classification.
 
 
 25
 For the reasons hereinbefore set out the order of the district court is reversed and the case remanded for the entry of an order granting the writ.
 
 
 26
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 Honorable Jesse E. Eschbach is sitting by designation from the United States District Court for the Northern District of Indiana
 
 
 [2]
 The dissenting opinion of Justice Jackson summarizes the matter thusly:
 "Perhaps what bothers the Court is that when no evidence is introduced against a registrant and the board fails to state its reasons for acting, there is no practical way for the trial court to determine whether the correct statutory standard has been applied." 346 U.S. at 400, 74 S.Ct. at 159.
 
 
 [3]
 United States v. Broyles, 423 F.2d 1299, 1304 (4th Cir. 1970); United States v. Washington, 392 F.2d 37, 39 (6th Cir. 1968); United States v. Abbott, 425 F.2d 910, 913 (8th Cir. 1970) and United States v. Haughton, 413 F.2d 736, 739 (9th Cir. 1969)
 
 
 [4]
 "Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term `religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code." 50 U.S.C. § 456(j)
 
 
 [5]
 Campbell v. United States, 221 F.2d 454 (4th Cir. 1955); Gaston v. United States, 222 F.2d 818 (4th Cir. 1955)