**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ray Nevin STETTER, Jr., Defendant-Appellant.**

**No. 30036.**

United States Court of Appeals,
Fifth Circuit.

June 14, 1971.

Rehearing Denied July 23, 1971.

Ralph K. Helge, Pasadena, Cal., for defendant-appellant.

Seagal V. Wheatley, U. S. Atty., Reese L. Harrison, Jr., Asst. U. S. Atty., W.D. Tex., San Antonio, Tex., for plaintiff-appellee.

Before GOLDBERG and DYER, Circuit Judges, and GROOMS, District Judge.

GOLDBERG, Circuit Judge:

Defendant Ray Nevin Stetter, Jr. appeals from a judgment of conviction by the District Court for failure to submit to induction into the armed forces in violation of 50 U.S.C.A. App. § 462 (a). Stetter's appeal is one among a legion of Selective Services cases seeking a chink in the decisional armor of the Selective Service System. Finding in the record no basis in fact to support

the denial of Stetter's request for a conscientious objector exemption, we reverse the judgment of conviction.

## I.

Stetter was born on February 10, 1945, and, upon reaching the age of eighteen, registered with Selective Service System Local Board 9 in San Antonio, Texas. Pursuant to applicable regulations, defendant, at the time of registration, answered and returned the basic classification questionnaire (SSS Form 100). Although Series VIII of the questionnaire provided a space for one claiming conscientious objector status to sign his name, defendant left the space blank. Thereafter, upon entering college, defendant was given a student deferment. Defendant remained in class II–S (student deferment), or was eligible for that classification, from December, 1963, until October, 1967, when his Local Board reclassified him I–A (available for induction). However, upon learning that defendant was in technical school, the Local Board reclassified Stetter in class II–A (occupational deferment) on November 21, 1967.

In February, 1968, defendant although satisfactorily pursuing his course of study, terminated his schooling many months short of graduation. On March 7, he wrote his Local Board informing it of his action. Stating that he had "a reason" for quitting school, defendant asked for an opportunity "to discuss it with * * * [the Board] personally." On March 14, the clerk of the Local Board replied to the defendant that his file would be reviewed by the Board at its next meeting and that defendant could file a request for a personal appearance 30 days after the Board reclassified him.

On March 19, the Local Board reclassified defendant I–A. Within the 30-day time limit, on April 11, defendant wrote requesting a personal appearance. In his letter he set forth the main "reason" why he wanted to talk to the Board personally. Stating that he had recently acquired strong religious beliefs which caused him to be conscientiously opposed to both combatant and noncombatant military service, defendant requested that he be reclassified I–O (conscientious objector).

On April 30, defendant received a Special Form for Conscientious Objectors (SSS Form 150), which he completed and returned to the Local Board. In the Form defendant set forth in some detail his reasons for requesting a conscientious objector exemption. Asked to describe the nature of his belief and whether or not it involved duties which he felt to be *superior* to those arising from any human relation, Stetter answered:

"I believe that God commands us to not kill a human being basing that belief on the teachings of the Bible specificaly [*sic*] defined in Exodus 20 verse 13, Deuteronomy 5 verse 17, Matthew 5 verse 44. Jesus said: But I say unto you, Love your enemies, bless them that curse you, do good to them that hate you, and pray for them which despitefully use you, and persecute you;

Verse 39. But I say unto you, That ye resist *not evil:* but whosoever shall smite thee on thy right cheek, turn to him the other also. Luke 6 verse 27

But I say unto you which hear, Love your *enemies,* do good to them which *hate* you.

Christ said in John 14 verse 21, that the person that has his commandments and keeps them is the person that loves him (Christ)

Jesus definitely commands us not to kill, to love our enemies and to do good to them. God finds no necessity for war because he does exist and is our protector *if* we walk in his commandments. I am trying to live as a Christain [*sic*] is commanded to do and I cannot do it by having anything to do with military life. It is contrary to the way of life of a Christian. Certain duties are required of a Christian such as doing no work on the 7th Sabbath, being a witness of Christ, not

swearing, smoking, excessive drinking, etc. I believe that humans are not to eat meats of those described in Leviticus 11 such as pork, shrimp, catfish, clams, etc.

Besides keeping the Sabbath a Christian is also command [*sic*] to observe the 7 other holy feast and fasts such as the Feast of Unleaven Bread, the Passover, etc.

God teaches respect for man's law but his law is supreme.

I am a loyal citizen of the United States and I love it very much, but I trully [*sic*] believe that by maintaining an Armed Force it is committing a sin.

If need be I am ready, willing, and able to serve my country in a civilian capacity doing good for mankind. I pray that you will believe me as I am deeply concerned with world affairs and the plight of mankind but I *know* there is another way."

Asked to explain "how, when, and from whom or from what source * * [he] received the training and acquired the belief which is the basis" of his conscientious objector claim, Stetter wrote:

"How! By studying the Bible (The Ten Commandments) Both Old & New Testament [*sic*] (Matthew 5:44). I started to study the Bible about May of 1967 after I had proved to myself that God does exist and that the Bible was inspired by him. I study under the Guidance of booklets and Bible Correspondance [*sic*] Course of the Radio Church of God."

Asked to state under what circumstances, if any, he believed the use of force was justified, defendant responded:

"The individual is commanded never to use force. The use of force is only given to the government of man in inforcing [*sic*] the laws of God such as Capital Punishment and is authorized in Exodus 21. This use of force is only given to man to rule is [*sic*] own nation and not to us [*sic*] in defence of or in aggression with na-

tions. Nations have no authority over other nations."

The questionnaire then asked defendant to "describe the actions and behavior in * * * [his] life which in * * [his] opinion most conspicuously demonstrate the consistency and depth of * * [his] religious convictions":

"Because of my relatively recent acquisition of the basic Laws in the Bible and way God expects a Christian to live I am not sure how I can demonstrate to you of any consistency and dept [*sic*] of my religious conviction. The only actions and or behavior I can think of is that I have started to observe the 7th day Sabbath, I don't eat pork, etc. Through my entire Life I have obeyed the Laws of our Land and have respect for them."

Stetter then completed the questionnaire by listing four references who could attest to the sincerity of his convictions against participation in war.

In a supplemental letter to the Local Board, defendant further elucidated his claim:

"For the past ten months or so, I have been studying the Bible in a diligent manner in order to answer the question to myself as to whether God exists or not. I am convinced he does and I have proved to myself also that the Old and New Testiments [*sic*] of the Bible are his inspired word. About two and a half or three months ago, I made a decision that I must live by his laws and change my way of life and thinking in order to obtain the grace that Jesus promised to all of mankind. I firmly believe that God the father and God the son exist and are living still. God clearly defined what sin was and that one of the greatest sins is to kill. In the New Testiment [*sic*] Jesus Christ magnified that commandment by instructing us to love our enemies and to do good to them which hate us (Luke 6 verse 27). When Christ was being handled by the crowd that came with Judas to crucify him, one of his disciples took

a sword and cut off the ear of one of the men in the crowd. Christ said in Matthew 26 verse 52 'Put up again thy sword into his place: for all they that take the sword shall perish with the sword.' I could continue quoting the scriptures and taking out all referances [sic] to killing and war but that would be preaching rather than stating the basis for my belief so I will stop here on this subject.

"I feel I must point out some other reasons as to why I know I must not served in the armed forces. I definitely believe that the 7th day Sabbath and the seven anual [sic] holydays must be observed by not doing any servile work. These holydays are the same as the people of ancient Israel were commanded to observed [sic], the Passover, the Feast of the Unleaven Bread, the Feast of the Tabernacles, etc. Another area that leads to possible conflict is the fact that I cannot eat unclean foods such as pork, shrimp, catfish, etc. I am afraid that if I was in the service I would be forced to disobey orders at times because of my beliefs when God's laws and man's laws conflict than [sic] I must go God's way.

"I definitely believe in God's laws and am determined to change myself through Jesus Christ. I hope that you will believe me. I am not a draft-dogger [sic], I believe in law, and, I love my country, and, I hope I will not have to disobey the law but serve my country. I want to state that I will service [sic] my country in a civilian capacity if required of me. I simply believe that I would be doing a wrong if I served in the armed services."

After receiving this information from defendant, the Local Board granted him a 15 minute personal appearance on May 16, 1968. Defendant met with the Board on that date but was denied the opportunity to have his brother testify in his behalf. No transcript or summary was made of the hearing. After the personal appearance the Board denied defendant's requested I–O classification and again classified him I–A. Defendant was never notified of any reason for the denial of his claim, nor did the Board set forth any reason for its action in defendant's Selective Service file.

On June 10, defendant appealed to the State Appeal Board, which unanimously affirmed the I–A classification, again without any indication of the reasons for its action.

Defendant was subsequently ordered to report for induction on August 12, 1968. Stating that he considered himself "subject to * * * a higher power [which] contradicts this law of man," Stetter refused to take the symbolic step forward. Indictment and conviction followed.

## II.

Defendant's primary contention[1] is that his Local Board and the State Appeal Board erred in refusing to classify him as a conscientious objector opposed to both combatant and noncombatant service in the armed forces. Thus, defendant argues, the induction order issued upon this erroneous classification was invalid, and his conviction for refusal to be inducted cannot stand. Our scope of review is limited. In Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, the Supreme Court held that judicial relief may be

1. Defendant has raised numerous other grounds as a basis for reversing his conviction. Specifically, defendant additionally contends (1) that his Local Board was improperly constituted; (2) that his Local Board improperly failed to contact or hear his witnesses; (3) that the Selective Service regulations unlawfully denied him a right to be represented by counsel; and (4) that the Government improperly withheld certain favorable evidence from his file. Since we dispose of this case on defendant's contention that there was no basis in fact to reject his claim to a conscientious objector exemption, we do not consider these other allegations.

granted a Selective Service defendant only where there is evidence that the classificatory conclusion of the Selective Service System was without any basis in fact.[2]

The first question we obviously must resolve is whether or not defendant established before his Local and Appeal Board a prima facie case of conscientious objection. If he failed to do so, we may go no further.

The applicable statutory provision reads in part as follows:

> "(j) Nothing contained in this title [sections 451, 453, 454, 455, 456 and 458—471 of this Appendix] shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code. * * * "

In United States v. Seeger, 1965, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733, the Supreme Court established a test under this statute for determining what constitutes a religious belief sufficient to establish a prima facie case for classification as a conscientious objector:

> "The test might be stated in these words: A sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption comes within the statutory definition. This construction avoids imputing to Congress an intent to classify different religious beliefs, exempting some and excluding others, and is in accord with the well-established congressional pol-

icy of equal treatment for those whose opposition to service is grounded in their religious tenets."

380 U.S. at 176, 85 S.Ct. at 859.

In Welsh v. United States, 1970, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308, the Court adopted an even more expansive view of what constitutes a belief within the protection afforded by section 456(j), holding that a deeply and sincerely held moral and ethical belief may qualify even though the belief is not considered to be religious by the applicant and is founded to a substantial extent on considerations of public policy. However, since Stetter's beliefs, as evidenced by his Selective Service record, are clearly and predominantly religious under *Seeger*, it is unnecessary to consider the applicability of *Welsh*.

■ Applying the *Seeger* test in evaluating Stetter's application for conscientious objector status, we think it apparent that he established a prima facie case. In his answers to Form 150 and his accompanying letter defendant stated that as a result of his belief in a Supreme Being and his study of the Bible he felt obligated to renounce the use of force and felt required to refuse to serve in any form of military activity. Extensive Biblical documentation was provided. Numerous decisions have held that beliefs similar to those espoused by Stetter constitute a prima facie case for conscientious objection status. *E. g.,* United States v. Joyce, 7 Cir. 1971, 437 F.2d 740; United States v. Lemmens, 7 Cir. 1970, 430 F.2d 619; United States v. Deere, 2 Cir. 1970, 428 F.2d 1119; Kessler v. United States, 5 Cir. 1969, 406 F.2d 151; United States v. Griffith, N.D.Ill.1971, 323 F.Supp. 1034; United States v. Mack, S.D.N.Y.1970, 311 F.Supp. 1230. Stetter's characterization of his beliefs and his documentation in support thereof may not have been as scholarly or as artful as that pro-

---

**2.** The holding in *Estep* is now codified in section 10(b) (3) of the Military Selective Service Act of 1967, 50 U.S.C.A. App. § 460(b) (3). Relief, of course, may also be granted where it is shown

that there has been some procedural unfairness in classifying a registrant. See Mulloy v. United States, 1970, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362; Estep v. United States, supra.

vided by many other conscientious objector applicants, but we cannot hold that "only the articulate may qualify as conscientious objectors." United States v. James, 4 Cir. 1969, 417 F.2d 826, 829. As Judge Wisdom has recently noted: "One does not have to be a St. Augustine or a Thomas Aquinas to qualify as a conscientious objector. * * * Conscientious objection has no necessary relation to intellectual sophistication." Helwick v. Laird, 5 Cir. 1971, 438 F.2d 959, 964; accord, United States v. Joyce, supra.

## III.

■ Having found that defendant Stetter met his burden of establishing before the Local Board a prima facie case for a conscientious objector exemption, we must next consider whether the record reveals a basis in fact on which this facial entitlement may be overcome. We bear in mind that once a registrant has established a prima facie case, the Local Board or State Appeal Board must rely on some affirmative evidence in the record to refute the claim. Surmise or suspicion is not enough. Helwick v. Laird, supra, 438 F.2d at 963; United States v. Deere, supra; United States v. White, 5 Cir. 1969, 421 F.2d 487, 492; United States v. Owen, 8 Cir. 1969, 415 F.2d 383, 389; United States v. Prince, D.Me. 1970, 310 F.Supp. 1161, 1165; Cf. Dickinson v. United States, 1953, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132. In Witmer v. United States, 1955, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428, a case where a Jehovah's Witness claimed a conscientious objector classification, the Supreme Court contrasted the issue and nature of the proof to provide a basis in fact to reject the I–O claim, with the issue and nature of the proof to deny a claim of ministerial exemption, which was considered in Dickinson:

"Petitioner argues from this [holding in Dickinson] that there was no specific evidence here incompatible with his claimed conscientious objec-

tor status. But in Dickinson the registrant made out his prima facie case by means of objective facts—he was a 'regular or duly ordained minister of religion.' Here the registrant cannot make out a prima facie case from objective facts alone, because the ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form. In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. In conscientious objector cases, therefore, any fact which casts doubt on the veracity of the registrant is relevant. It is 'affirmative evidence * * * that a registrant has not painted a complete or accurate picture. * * *' Dickinson v. United States, supra, 346 U.S. at page 396, 74 S.Ct. at page 157. In short, the nature of a registrant's prima facie case determines the type of evidence needed to rebut his claim. If the issue is the nature of his activities, as in Dickinson, the evidence provided [sic] 'basis in fact' must tend to show that his activities are other than as stated. If, as here, the issue is the registrant's sincerity and good faith belief, then there must be some inference of insincerity or bad faith."

"Since Witmer stated his beliefs with apparent sincerity, and since we find no indication anywhere in the record that his demeanor appeared shifty or evasive or that his appearance was one of unreliability, we must examine the objective facts before the Appeal Board to see whether they cast doubt on the sincerity of his claim." 348 U.S. at 381–382, 75 S.Ct. at 395–396.

■ To establish the required affirmative evidence to support a basis in fact for rejecting defendant's prima facie case, the Government first points to several objective facts of record in de-

fendant's Selective Service file. First, the Government contends that "nowhere in the registrant's cover sheet is there any indication to show measurably how much religious training and belief there had been in * * * [his] life to have influenced the position that he was then taking before the Local Board." There was no evidence of any sort, the Government continues, to "indicate and corroborate whether the conscientious objection claimed by * * * [Stetter] was the primary controlling force in his life." Two arguments seem intertwined in this attack on defendant's prima facie entitlement to conscientious objector status. One contends that defendant has shown insufficient religious training in the molding of his beliefs against participation in war in any form. The other focuses on the lack of impact of these beliefs on defendant's life, however derived. We disagree with both aspects of the Government's argument.

As noted earlier, defendant has shown enough to come within the test of *Seeger*. That case simply requires that the registrant establish "a sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying for the exemption." 380 U.S. at 176, 85 S.Ct. at 859. Defendant, in documenting his claim, demonstrated ample religious training. He stated that his conscientious objector claim was based on study and training which began to crystallize sometime before May, 1967. This study and training consisted of reading the Bible "under the guidance of booklets and [the] Bible Correspondence Course of the Radio Church of God." In United States v. Garvin, 7 Cir. 1971, 438 F.2d 1054, 1057–1058, the Seventh Circuit held that a registrant who simply stated that the source of his conscientious objector beliefs was "reading, family and religious influences" set forth enough to come within the statute. Moreover, we think that the Government has misconceived the importance of extensive training. It is not the form or

amount of training that is crucial. Sincerity of belief is the touchstone. The extent of training may, and often does, have no correlation with sincerity. *See* Caverly v. United States, 8 Cir. 1970, 429 F.2d 92, 94; United States v. White, *supra*. Moreover, since Stetter has indeed established extensive religious training through study and reflection, the Government's argument on this point is doubly without merit.

Nor do we think that the Government has supplied a basis in fact by contending that defendant has failed to demonstrate that his beliefs are the primary controlling force in his life. The Government's argument does no more than beg the crucial question in every conscientious objector case: whether the registrant sincerely holds beliefs which compel him to oppose participation in all forms of war. The very fact that defendant requested a conscientious objector exemption and stated enough to come prima facie within *Seeger* demonstrates that his beliefs, assuming they are sincere, have significantly affected his life in the only manner relevant under the statute. The registrant need show no more. The two-pronged edge of the Government's first asserted basis in fact is therefore insufficient to support the Local and Appeal Boards' rejection of defendant's prima facie case.

The Government next points to the tardiness of defendant's claim to the conscientious objector exemption. As stated in the Government's brief, there is a basis in fact for rejecting Stetter's claim since he "did not make a claim for conscientious objection until he dropped out of school prior to graduation and was no longer entitled to a student deferment. At this time, he was 24 years of age and certainly induction into the Armed Forces was much more imminent at that time than any prior time in his life."

It is true that some courts, including this one, have held that imminence of

induction may provide a basis in fact for refuting an otherwise prima facie case of conscientious objection. *E. g.*, Carson v. United States, 5 Cir. 1969, 411 F.2d 631, cert. denied, 396 U.S. 865, 90 S.Ct. 143, 24 L.Ed.2d 119; United States v. Henderson, 5 Cir. 1969, 411 F.2d 224, cert. denied, 399 U.S. 916, 90 S.Ct. 2204, 26 L.Ed.2d 574; Salamy v. United States, 10 Cir. 1967, 379 F.2d 838. Other courts have disagreed with this proposition and held that imminence of induction by itself is never sufficient to refute what otherwise appears to be a sincerely held belief in the abhorrence of war. *E. g.*, United States v. Joyce, *supra*, 437 F.2d at 744–745; Scott v. Commanding Officer, 3 Cir. 1970, 431 F.2d 1132, 1137; Capobianco v. Laird, 2 Cir. 1970, 424 F.2d 1304, vacated on other grounds, 402 U.S. 969, 91 S.Ct. 1648, 29 L.Ed.2d 134 (1971); United States v. Bellafiore, E.D Penn.1971, 322 F.Supp. 1060, 1062–1063; *see* United States ex rel. Hemes v. McNulty, 7 Cir. 1970, 432 F.2d 1182, 1187–1188; *cf.* Ehlert v. United States, 1971, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 ("The very assertion of crystallization just before induction might cast doubt upon the genuineness of some claims, but there is no reason to suppose that such claims could not be every bit as bona fide and substantial as the claims of those whose conscientious objection ripens before notice or after induction").

Following the law of this circuit, as we must, we nevertheless feel that the Government's contention is without merit. There is nothing in defendant's file to show that he claimed conscientious objection because he lost his II–A deferment and became susceptible to induction. Quite the contrary. It was defendant who, although satisfactorily pursuing a course of study, terminated his schooling and notified his Local Board that he was no longer eligible for an occupational deferment. In his letter to the Board, the defendant stated that he had a reason for this action, but wished to meet with the Board person-

ally to discuss the matter. The subject which the defendant wished to discuss with the Board, of course, was his developing religious beliefs, beliefs which in part caused him to terminate his schooling. The clerk of the Local Board informed defendant that he could request a personal appearance within 30 days after reclassification. Accordingly, after being reclassified I–A, defendant wrote the Board asking for a personal appearance and requesting reclassification as a conscientious objector. It is therefore clear that defendant experienced no sudden accession of beliefs once faced with the imminence of induction; his request for a I–O exemption instead represented the crystallization of 10 months of study, which occurred while defendant was deferred. His delay in formally requesting I–O status can be attributed only to a desire to discuss the matter personally with the Board and to a reliance on the advice of the Local Board clerk.

There is an even more fundamental reason, however, why we think *Henderson* is inapplicable. As pointed out by the Second Circuit in United States v. Bornemann, 2 Cir. 1970, 424 F.2d 1343, and reiterated by the Eighth Circuit in United States v. Abbott, 8 Cir. 1970, 425 F.2d 910, 915, *Henderson* and cases like it all involved situations where "there was a substantial period of time during which the presentation of conscientious objector claims 'might [have resulted] in the registrant being placed in a different classification.'" United States v. Bornemann, *supra*, 424 F.2d at 1348. The language quoted by the Second Circuit is taken from 32 C.F.R. § 1625.1(b), which makes it clear that a registrant, such as Stetter, is under no duty to notify his Local Board of a conscientious objector claim while deferred in class II–A or class II–S. That regulation provides that "[e]ach classified registrant * * * shall, within 10 days after it occurs, report to the local board in writing any fact that might result in the registrant being placed in a differ-

ent classification. * * * " [3] Those facts which might result in a different classification are, according to 32 C.F.R. § 1623.2,[4] only those facts which could result in the registrant being placed in a *lower* classification. Since section 1623.2 specifically notes that both class II–S and class II–A are lower than class I–O, defendant's claim of conscientious objection was not relevant until he became classified in class I–A. To penalize defendant for failure to act with greater dispatch than the regulations require would be both improper and unfair. Claims for student and occupational deferments being in no way inconsistent with a claim of conscientious objection, United States v. Newton, 9 Cir. 1970, 435 F.2d 671, 674–675; Capobianco v. Laird, *supra,* we cannot ground a basis in fact for rejecting defendant's prima facie case on the fact that he followed the applicable Selective Service regulations.

▬ The only other ground asserted by the Government as a basis in fact for refuting Stetter's claim is that the Local Board simply did not believe his protestations of conscience. *See* Witmer v. United States, *supra;* United States v. McDuffie, 5 Cir. 1971, 443 F.2d 1163. *But see* United States v. St. Clair, E.D.N.Y.1968, 293 F.Supp. 337, 345. As a general proposition it is true that in conscientious objector cases, where sincerity is the touchstone, Local Boards, which have had an opportunity to observe the registrant's demeanor and to listen to his testimony, may support rejection of his claim by reliance on disbelief of the registrant, so long as that disbelief is supported by "hard, provable, reliable facts," Helwick v. Laird, *supra,* 438 F.2d at 963, which substantially refute the registrant's professed sincerity. *See* Kessler v. United States, *supra,* 406 F.2d at 156. The problem, however, is that on the present record there is no evidence that the Local Board did find defendant insincere by virtue of his appearance before it. Much less is there any indication of any basis for such disbelief. Rather, the record is silent, for the Local Board assigned no reasons for its action. The Government's argument, then, is based on sheer guessmanship. But that will not do. As Judge Coleman of our court recently stated in Kessler v. United States, *supra,* 406 F.2d at 156:

"To be precise about it, the disbelief of Selective Service officials will not justify the rejection of a claim for conscientious objector status unless there is some affirmative evidence to support the rejection of the claimed exemption or there is something in the record which *substantially* [emphasis by Judge Coleman] blurs the picture painted by the registrant and thus casts doubt on his sincerity, Batterton v. United States, 8 Cir. 1958, 260 F.2d 233."

In the instant case

"we are wholly uninformed why the Local Board denied * * * [Stetter's] claim. Although the Government assumes the Board thought him insincere, we do not even know that, much less why." United States v. Deere, *supra,* 428 F.2d at 1122.

---

3. This regulation is based upon 50 U.S.C.A. App. § 465(b), which provides that "[i]t shall be the duty of every registrant to keep his local board informed as to * * changes in status as required by such rules and regulations as may be prescribed by the President."

4. 32 C.F.R. § 1623.2 provides:

Every registrant shall be placed on Class I–A under the provisions of section 1622.10 of this chapter except that when grounds are established to place a registrant in one or more of the classes listed in the following table, the registrant shall be classified in the lowest class for which he is determined to be eligible, with Class I–A–O considered the highest class and Class I–C considered the lowest class according to the following table:

| Class: I–A–O | Class: IV–B |
|---|---|
| I–O | IV–C |
| I–S | IV–D |
| I–Y | IV–F |
| II–A | IV–A |
| II–C | V–A |
| II–S | I–W |
| I–D | I–C |
| III–A | |

We are admonished to ferret the record for a basis in fact for the classification of Stetter. If the objective facts found in the record do not lead us to the factual basis, as they do not, the Government asserts that we may assume that intangible factors such a demeanor form such a basis. But how can we as a reviewing court know that the Board relied on such submicroscopic data if we are not so informed? We are not endowed with extrasensory perception. It is like playing the philosopher's game of looking into a dark room for a black cat that is not there. We refuse to play such a game. Lacking even a simple *ipse dixit* of lack of sincerity, *see* United States v. Corliss, 2 Cir. 1960, 280 F.2d 808, 814, cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105, we do not in the present case even reach the issue of whether the observation of defendant provided a fair and rational basis to support such a finding. The Government's mere assertion that the Local Board disbelieved defendant supplies no basis in fact whatsoever to support the rejection of Stetter's prima facie case, *cf.* Mulloy v. United States, *supra*. *See also* Capobianco v. Laird, *supra*; United States v. Prince, *supra*; United States v. St. Clair, *supra*.

This conclusion is even more manifest in light of the fact that the Local Board classification was appealed to and affirmed by the State Appeal Board. As we have stated, "[a]n Appeal Board considers matters of classification *de novo* and its classification of a registrant is one of first instance, superseding that of the local Board even though the classification is the same as the one given by the local Board." United States v.

White, *supra*, 421 F.2d at 490. Under the applicable Selective Service regulations, the Appeal Board must base its decision on the objective facts revealed in the registrant's record. *See* 32 C.F.R. § 1626.24(b). Thus, as the Eighth Circuit has recently stated:

"[Disbelief of defendant's sincerity based on the Local Board's observation and questioning of him] cannot serve as a basis-in-fact for an appeal board to reject a conscientious objector claim unless there exists some disclosure of this finding of unreliability by the local board on the applicant's selective service record," United States v. Abbott, *supra*, 425 F.2d at 913.

For all of the foregoing reasons we are compelled to reverse defendant's conviction since the induction order which he refused to obey was premised upon a classification without any basis in fact. In doing so, however, we think it appropriate to go one step further and adopt the following prophylactic rule:

" * * * In any case where the board fails to disclose the basis for its decision, we risk blind endorsement of a mistake of law. Where it is clear that a *prima facie* case was established, we conclude that in conscientious objector cases, it is essential to the validity of an order to report that the board state its basis of decision and the reasons therefor, i. e., whether it has found the registrant incredible, or insincere, or of bad faith, and why."

This rule, quoted from United States v. Broyles, 4 Cir. 1970, 423 F.2d 1299, 1304 (en banc), has recently been adopted in various forms by not only the Fourth,[5] but also the Ninth,[6] Eighth,[7] Seventh,[8]

5. In addition to *Broyles*, the rule has been adhered to in the following Fourth Circuit cases: United States v. Simpson, 4 Cir. 1970, 426 F.2d 286; United States v. Perdue, 4 Cir. 1970, 425 F.2d 1092; O'Brien v. Resor, 4 Cir. 1970, 423 F.2d 594; see United States v. James, supra.

6. United States v. Mount, 9 Cir. 1970, 438 F.2d 1072; United States v. Prichard, 9 Cir. 1970, 436 F.2d 716; United States,

v. Coffey, 9 Cir. 1970, 429 F.2d 401; United States v. Haughton, 9 Cir. 1969, 413 F.2d 736; see Goodwin v. Laird, N.D. Cal.1970, 317 F.Supp. 863.

7. See Caverly v. United States, supra.

8. United States v. Velen, 7 Cir. 1971, 437 F.2d 763; United States ex rel. Hemes v. McNulty, supra; United States v. Lemmens, 7 Cir. 1970, 430 F.2d 619; United States v. Griffith, supra.

Sixth,[9] Third,[10] and Second[11] Circuits, and several District Courts.[12] The essence of this rule is that whenever a registrant has asserted a prima facie case of conscientious objection, the Local Board—and, if appealed, the State Appeal Board—must state the grounds upon which rejection of the claim is based and the reasons in support thereof. Thus, findings and reasons are required not only where the Board relies upon demeanor, an obvious proposition, but also where the board relies upon some objective fact to refute the registrant's sincerity. Any other rule, in our view, would not only be unfair to the registrant but would result in the abdication of our responsibility of judicial review under the statute.

The Selective Service System's procedures for processing and drafting men pursuant to the Government's power to raise and maintain an army to protect the national security must of necessity be devised to operate with speed and efficiency. Because of this necessity, perhaps, the procedural scheme lacks a number of important safeguards which are normally provided where important personal interests are at stake. *See generally* White, Processing Conscientious Objector Claims: A Constitutional Inquiry, 56 Cal.L.Rev. 652 (1968); Note, Judicial Review of Selective Service Classifications, 56 Va.L.Rev. 1288 (1970). For example, the personal appearance [13] afforded the registrant is a closed hearing, and no official transcript is provided; moreover, there is no right to the assistance of counsel at the hearing. The registrant has no right, other than at the Board's sufferance, to present witnesses

in his behalf, and he cannot cross-examine adverse witnesses. If the registrant decides to appeal,[14] he may not appear personally before the Appeal Board to argue his case. Following an adverse determination by an Appeal Board, further administrative review is not available as of right,[15] and the right to judicial review, as we have noted, is severely curtailed. The courts are limited to the administrative record and may not take evidence beyond it. The scope of review, based upon that record, has been called "the narrowest known to law." Clay v. United States, 5 Cir. 1968, 397 F.2d 901, 915, vacated, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297.

To require the Local Board and the State Appeal Boards to state why they are rejecting an otherwise prima facie case for conscientious objection simply injects a modicum of justice into this system. In the first place, without such statements, the registrant, often untutored in the subtleties of Selective Service law and unrepresented by counsel, will have no meaningful opportunity to disprove, clarify, or rebut before the Local Board the grounds upon which that body has relied in refusing his conscientious objector application. Absent a statement of reasons, the assurance in the regulations that at the personal appearance

> "the registrant may discuss his classification, may point out the class or classes in which he thinks he should have been placed, and may direct attention to any information in his file which he believes the local board has overlooked or to which he believes it has not given sufficient weight. The

9. United States v. Washington, 6 Cir. 1968, 392 F.2d 37.

10. United States v. Speicher, 3 Cir. 1971, 439 F.2d 104; Scott v. Commanding Officer, supra; see United States v. Bellafiore, supra.

11. United States v. Lenhard, 2 Cir. 1970, 437 F.2d 936; see United States v. Deere, supra; Paszel v. Laird, 2 Cir. 1970, 426 F.2d 1169; United States v. Gearey, 2 Cir. 1966, 368 F.2d 144, cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368.

12. E.g., United States v. Prince, supra, in addition to the District Court cases cited in notes 6, 8, and 10 supra.

13. The regulations governing appearances before the Local Boards are set forth at 32 C.F.R. §§ 1624.1–.3.

14. The regulations governing appeals to the Appeal Boards are set forth at 32 C.F.R. §§ 1626.1–.61.

15. The regulations governing appeals beyond the Appeal Board are set forth at 32 C.F.R. §§ 1627.1–.8.

registrant may present such further information as he believes will assist the local board in determining his proper classification," 32 C.F.R. § 1624.2(b)

has a hollow ring. *Cf.* United States v. James, *supra,* 417 F.2d at 829.

Similarly, the registrant's right to a meaningful administrative appeal is abrogated by the silence of the Local Board. Recently a unanimous Supreme Court said:

"Because of the narrowly limited scope of judicial review available to a registrant, the opportunity for full administrative review is indispensable to the fair operation of the Selective Service System." Mulloy v. United States, *supra,* 398 U.S. at 416, 90 S.Ct. at 1771.

Without a statement of reasons, a registrant is unable to take advantage of his right under the regulations to specify before the Appeal Board "the matters in which he believes the local board erred" or the information "which he believes the local board has failed to consider or to give sufficient weight." 32 C.F.R. § 1626.12; *see* United States v. St. Clair, *supra,* 293 F.Supp. at 345.

Several years ago, in Gonzales v. United States, 1955, 348 U.S. 407, 75 S.Ct. 409, 99 L.Ed. 467, the Supreme Court reversed the conviction of a registrant who had claimed and been denied a conscientious objector exemption. The Court said:

"Just as the right to a hearing means the right to a meaningful hearing, United States v. Nugent, *supra* [346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417]; Simmons v. United States, *supra* [348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453], so the right to file a statement before the Appeal Board includes the right to file a meaningful statement, one based on all the facts in the file and made with awareness of the recommendations and arguments to be countered." 348 U.S. at 415, 75 S.Ct. at 413.

*Gonzales* arose under pre-1967 procedures wherein administrative review of Local Board rejections of conscientious objector claims followed a different path from that of other claims. As summarized by the Third Circuit in United States v. Speicher, *supra,* 439 F.2d at 107:

"Appeal from such a denial was followed by an F. B. I. investigation, a *de novo* hearing before the Department of Justice at which the registrant was permitted to be heard on the character and good faith of his conscientious objections, an advisory recommendation by the Department, and an opportunity for the registrant to file a written reply to this recommendation. See United States v. Broyles, 423 F.2d 1299, 1305–1307 (4th Cir. 1970). Since July of 1967 administrative review of conscientious objector claims has been removed from the Justice Department and is now processed through ordinary Appeal Board channels. The Appeal Board's review is restricted to the record before the Local Board, and the only additional matter which may be considered is a written statement from the registrant specifying why he believes the Local Board erred. 32 C.F.R. § 1626.24(b) (1); § 1626.12."

*See also* White, *supra,* at 657–660. The admonition in *Gonzales* that one must know the basis upon which his claim is denied *is even more essential today* following the elimination of the pre-1967 procedural protections. Again, in the words of the Court in *Speicher*:

"Full administrative review in 1955 included the opportunity to respond to written recommendations. Gonzales v. United States, *supra.* In 1970 it can mean no less than that the Appeal Board be informed of the basis for the Local Board's action." 439 F.2d at 108.

Finally, and perhaps most importantly, the failure of either the Local Board or the Appeal Board to set forth its findings and reasons in support of a denial of a prima facie case of conscientious objection precludes effective judicial review from the final administrative deci-

sion. The instant case, as we have earlier demonstrated, provides a clear example. Without a statement of its reasons by either the Local Board or the Appeal Board, we are unable to discharge even our limited function of review in determining whether there is a "basis in fact" for the classification assigned. *See* Scott v. Commanding Officer, *supra*, 431 F.2d at 1137; United States v. Lemmens, *supra*, 430 F.2d at 623; United States v. Broyles, *supra*, 423 F.2d at 1303; United States ex rel. Morton v. McBee, N.D.Ill.1970, 310 F. Supp. 328, 331. Our system cannot tolerate such judicial know nothingism. In United States v. Haughton, *supra*, 413 F.2d at 742–743, the Ninth Circuit stated:

> "We hold that the allegations in Haughton's form 150 place him 'prima facie within the statutory exemption.'
>
> "In *Seeger*, the Court recognized that 'in resolving these exemption problems one deals with the beliefs of different individuals who will articulate them in a multitude of ways.' 380 U.S. at 184, 85 S.Ct. at 863. In addition, we are dealing with young people who may not have been required to articulate their beliefs before, or match them to the type of questions in the form 150. These factors make the function of the local board and the reviewing court difficult. Part of this difficulty will be removed if the local board specifies the reasons for its action. A Court can then readily determine the propriety of the action it is asked to review.
>
> "The local board may have concluded that Haughton was insincere in his claim, or that Haughton's religious training and beliefs did not, by themselves, lead him to his opposition to war. The board may have relied on information not in the record, contradicting the allegations in Haughton's form 150. Or the board may have erroneously concluded that Haughton's allegations, even if true, did not entitle him to his requested classification. Since the board has not stated the basis for its decision, we cannot determine whether Haughton was properly denied conscientious objector status. United States v. Jakobson, *supra* [325 F.2d 409], *aff'd sub nom.* United States v. Seeger, *supra*."

For these reasons we are convinced that the Fourth Circuit rule is a salutary one and should be adopted by us. That rule not only facilitates meaningful consideration and review of a registrant's claim but also promotes a sense that the law has dealt fairly with the registrant. In the words of the Supreme Court, "justice must satisfy the appearance of justice." Offutt v. United States, 1954, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11. Registrants should not be forced to accept any paraphrase of the bromidic inanity—"Theirs not to reason why, Theirs but to do or die." [16]

We are, of course, not unmindful that the Selective Service System cannot be baggaged with all the habiliments or impedimenta of an adversary trial. On the other hand, the System's ratiocinations must not be so shrouded in mystery that neither the registrant nor the court has an opportunity to test them for factual reliability and rationality. We simply take the middle ground. The Local Boards and Appeal Boards, therefore, need not promulgate courtlike formal findings of fact, but they must at least state their findings and

> "briefly summarize in the record those facts, whether they be inconsistencies in action or written statements, shifty or evasive demeanor, appearance of unreliability, lateness of claim or any other factors reasonably causing the board to reach its conclusion." United States ex rel. Hemes v. McNulty, *supra* 432 F.2d at 1187.

This is no onerous burden, and the gains to be derived, we think, amply justify any imposition it might entail.

The judgment of conviction is reversed.

---

16. Tennyson, The Charge of the Light Brigade, Stanza 2 (1854).