**UNITED STATES of America ex rel. Morse Fredric STEIN, Petitioner-Appellant,**

v.

**Major Roland G. GILLEN et al., Respondents-Appellees.**

No. 71-1725.

United States Court of Appeals, Seventh Circuit.

Argued May 16, 1972.

Decided June 20, 1972.

George C. Pontikes, Chicago, Ill., for petitioner-appellant.

Joseph Beeler, Robert N. Clinton, Chicago, Ill., Curry First, Milwaukee, Wis., John N. Tierney, Chicago, Ill., for amici curiae, Central Committee for Conscientious Objectors); Midwest Committee for Draft Counseling; American Friends Service Committee; and Illinois Division American Civil Liberties Union.

James R. Thompson, U. S. Atty., Jeffrey Cole, John Peter Lulinski, Mary L. Sfasciotti, Asst. U. S. Atty., Chicago, Ill., for appellees.

Before DUFFY and CASTLE, Senior Circuit Judges, and FAIRCHILD, Circuit Judge.

CASTLE, Senior Circuit Judge.

The petitioner-appellant, Morse Fredric Stein, prosecutes this appeal from the District Court's denial of his petition for writ of habeas corpus in which appellant seeks an order directing his discharge from the custody of the Armed Forces. The petition was filed on June 16, 1971, on the same day appellant was inducted, and is grounded on the allegation, *inter alia,* that there is no basis in fact for the decisions of the local selective service board and the state appeal board denying appellant's request for classification as a conscientious objector, and that, therefore, his induction was illegal and void.

The record discloses that in 1965 upon attaining eighteen years of age, appellant registered with Selective Service Local Board No. 64 located at Elmira, New York. He was then a full time college student and, accordingly, he was classified 2-S on October 14, 1965. He remained so classified until he graduated from college in 1970. Following a physical examination, the appellant was on July 13, 1970, found medically and morally acceptable for induction, and was classified 1-A by the local board. On August 11, 1970, appellant requested a personal appearance with the local board, and on August 29, 1970, requested SSS Form 150 (the Special Form for Conscientious Objectors). After appellant completed the form it was filed with the board October 1, 1970, and appellant was afforded a personal appearance before the board on October 15, 1970, at which time he further expanded on his application for a 1-O classification and answered questions put to him. On that same date the local board denied the appellant's application for such conscientious objector classification and classified him 1-A. Thereafter, appellant filed a timely administrative appeal and requested its transfer to the Illinois State Appeal Board, since he was then living in Chicago, Illinois. The transfer was effected and on February 9, 1971, the appeal board rejected appellant's request for classification as a conscientious objector and classified him 1-A. Pursuant to a subsequent notice of induction, the appellant reported and submitted to induction.

The local board as the basis for its opinion that the appellant is not a genuine conscientious objector stated:

"Registrant has failed to show that moral & ethical convictions have directed his life in the way traditional religious convictions of equal strength, depth, and duration have directed the lives of those whose beliefs are clearly founded in traditional religious conviction. Expediency."

The appeal board on its *de novo* consideration and rejection of appellant's claim to conscientious objector status found that his claim "is not sincere", citing the lateness of the claim, characterizing the nature of his beliefs as primarily philosophical and primarily emanating from a personal moral code, and stating that the convictions were not deeply held.

It is conceded that the record presents no question but that appellant established a prima facie claim entitling him to classification as a conscientious objector under the criteria of Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308. He does not assert a theocratic basis for his belief against participation in war but rather a moralistic and ethical one within the purview of the teachings of *Welsh.*

█ The District Court recognized that lateness does not constitute an independent ground for the denial of a 1-O classification but that only where unexplained tardiness of the claim is coupled with other indicia of insincerity may it serve to undermine the credibility of the

registrant.[1] United States v. Joyce, 7 Cir., 437 F.2d 740, 744–745. And see: Ehlert v. United States, 402 U.S. 99, 103–104, 91 S.Ct. 1319, 28 L.Ed.2d 625. But, the District Court, equating the local board's finding of "expediency" with the appeal board's finding of "insincerity" concluded that there was support in the record for such a finding. We disagree.

This Court in United States ex rel. Hemes v. McNulty, 432 F.2d 1182, 1187, recognized the unique nature of the Selective Service System and observed, with respect to the criterion to be employed in a judicial scrutiny of board action, that:

> "We do not lightly reach the position of overturning a Selective Service Board determination. The people who compose the local boards, performing as they do a somewhat thankless task, must of necessity be loyal and dedicated citizens engaging in a patriotic and civic duty. . . . the board members, all volunteers, are not in the position by the very nature of the Selective Service System to engage in court-like proceedings and when judicial scrutiny is given to their actions it should be basically on the narrow issue of whether there is any apparent basis for it."

But, as we subsequently pointed out in United States v. Joyce, 7 Cir., 437 F.2d 740, 745–746, this basis-in-fact standard does require that there at least be facts of a minimal probative value which support the board action, i. e., justify official disbelief of the registrant's claims.

▇ The District Court treated as significant the fact that the local board heard the appellant in person and "had the unique advantage of determining the integrity of his convictions from personal observation" (United States ex rel. Stein v. Gillen, 332 F.Supp. 953, 956). In this connection we advert to what we said in *Hemes* (432 F.2d 1182 at 1187):

> "While we have carefully refrained from imposing any requirement on boards that they promulgate a court-like formal finding of facts and are of the opinion that the 'basis in fact' may be otherwise determined, nevertheless, where the ultimate issue is the sincerity of the applicant, often times objective facts may not appear in the file. It would therefore appear to be desirable practice that the board, if it is denying the status claimed because of its belief in the lack of sincerity in the applicant, should state that fact and at least briefly summarize in the record those facts, whether they be inconsistencies in action or written statements, shifty or evasive demeanor, appearance of unreliability, lateness of claim or any other factors reasonably causing the board to reach its conclusion."

If the personal appearance of the registrant is to supply the basis for a finding of insincerity predicated on the subjective factors of demeanor or appearance the "desirable practice" recommended in *Hemes* becomes an imperative. The personal appearance afforded the local board with an opportunity to appraise appellant's sincerity on the basis of his demeanor and appearance before it, and if that demeanor or appearance reflected insincerity to so state in its finding. But the board did not do so. It did not utilize the practice recommended in *Hemes*. Consequently, on review, the appellant's personal appearance cannot be relied upon to supply anything not reflected by the objective factors presented in the written record.

---

1. Moreover, appellant's tardiness in asserting his claim was not unexplained. The record does disclose that his beliefs crystallized during his years at college (1965–1970). However, on his appearance before the local board he testified that it was "this summer [1970] after the Supreme Court decision" that he decided he might qualify as a conscientious objector. Welsh v. United States, *supra*, was decided June 15, 1970. Appellant filed his application for a 1–O classification October 1, 1970, after requesting the appropriate Form on August 29, 1970.

As to these latter factors the District Court was of the view that the record disclosed that appellant declined to disavow the Jewish wars of religion, the American Revolutionary War or our response to an attack in World War II, and that the boards in basing their determinations on the closely related grounds of lack of depth of conviction and insincerity were therefore supported by the record. But, in this respect, we conclude that the District Court misread the record.

■ Item 2 of the SSS Form 150 furnished to appellant called for an explanation as to how, when and from what source he acquired the belief which is the basis of his claim for exemption. As a preface to this explanation the appellant stated that he was the son of Jewish parents; had entered school and religious school simultaneously; in both places accepted what was taught as being basically true because it was taught by society and accepted at face value by those around him; and that he "accepted the American Revolution as I accepted the wars the Jews fought against their oppressors". He went on to detail the development of his beliefs through the high-school level and to state that his present belief was not fully shaped until after he reached college. We perceive nothing in appellant's admission that at the grade-school level he "accepted" the American Revolutionary War and the Jewish religious wars which militates against the sincerity of his present belief which admittedly meets the tests of *Welsh* if it is sincerely held. A childhood belief does not preclude the sincerity of a different belief reached at a later stage in life.

■ During the course of his personal appearance before the local board the appellant was asked: "Do you think we were right in defending ourselves in World War II?". He replied: "Cannot give an answer." But in answer to the question which followed he expressed his opposition to all wars, and had earlier stated if there was an attack he "would not go and fight" and "would go to jail first rather than fight". It is our opinion that in this context the appellant's failure to accept the board's invitation to express an opinion as to the "righteousness" of the conduct of others in connection with World War II is too tenuous to afford a factual basis for an inference that appellant is insincere in his personal beliefs as to participation in war in any form. And, appellant was not asked if he would have participated in World War II.

■ Insofar as a lack of depth of conviction is assigned as a factor in the determination of "insincerity" made by each of the boards it is likewise, and for the reasons above stated, unsupported by any fact of probative value. And, if it be assumed, *arguendo*, that "depth-of-conviction" was here employed as a test relating to the quality or substance of the claim [2] rather than to the sincerity of the appellant, nevertheless, the record presents no basis-in-fact to support a finding of lack of depth of conviction. The District Court opined that because the appellant had written to his representatives in Washington in support of legislation "which would bring an honorable end to the war" a basis was thereby afforded to support a board finding that appellant's beliefs lacked the degree of intensity requisite to an application of *Welsh*. The court reasoned that an "honorable end" implied something other than a "total renunciation" of war. But we fail to perceive how appellant's support of legislation to bring an "honorable end" to the Viet Nam conflict may be converted into a basis-in-fact for a finding that his beliefs which preclude his participation in war are not held with the strength of traditional religious convictions.

The order of the District Court is reversed and the cause is remanded for the entry of an order granting the writ.

Reversed and remanded.

2. But in this connection see: Kemp v. Bradley, 8 Cir., 457 F.2d 627 (1972).